Jocylin E. **KIMBLER**

v.

The **PITTSBURGH & LAKE ERIE RAIL-
ROAD COMPANY,** Appellant.

No. 14479.

United States Court of Appeals
Third Circuit.

Argued Nov. 22, 1963.

Decided May 5, 1964.

# 384

James R. Orr, Pittsburgh, Pa. (Reed Smith Shaw & McClay, Pittsburgh, Pa., on the brief), for appellant.

John M. Feeney, Pittsburgh, Pa. (Thomas L. Cooper, McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

GANEY, Circuit Judge.

In a non-jury FELA action the trial court found the railroad employee and the railroad were equally responsible for the injuries she sustained.[1] On this appeal from the judgment recovered by the employee, the railroad contends that the trial court erred in labeling certain omissions on its part as negligence, and even if its failure to have acted may be properly characterized as negligence, the plaintiff has failed to present the necessary probative facts from which the causal relations between that negligence and her injuries could reasonably be inferred.

There is little dispute as to the basic facts: The employee, while on her way to work, slipped and fell on ice-covered wooden steps. These steps were built and maintained by the railroad on its property. Her employment required her to report around 10:20 p. m. to a signal tower at the entrance of a railroad yard near McKees Rocks, a few miles from the outskirts of Pittsburgh, Pennsylvania. She drove her own car to work, and the only feasible way for her to reach the signal tower from the place where she parked her car was to descend a wooden stairway which led to the rear of the tower. The stairway, leading down, consisted of four steps made of railroad ties, a landing, then two flights of fifteen steps separated by a landing. With the exception of the first four steps, the risers of the stairway were left open. The steps were unpainted rough wooden planks. Handrails ran on each side of the entire length of the stairway. An overhead lamp, when lit, at the top of the stairway, provided the only artificial illumination at night.

On the night of March 3, 1959, at approximately 10:10 o'clock, the employee, then fifty-three years of age, parked her car on the lot at the top of the embankment above the tower. The surface of the lot had a coating of thin ice with light patches of snow. Ice had begun to form on the streets between 8:00 and 9:30 p. m. She walked from the lot to the top of the wooden stairway. The overhead lamp was lit. She descended the first four steps and traversed the first landing. When she put her foot on the first step of the first flight, she slipped and slid down to the next landing. The cause of her slipping was, in part, due to the fact that "the steps were glaced with ice." No salt, sand, sawdust or ashes had been spread on the stairway.

In icy weather the railroad did not assign anyone to spread deicing or anti-slipping material on the stairway in question. It did not store such material in or immediately adjacent to the tower or stairway, and the tower operators were not permitted to leave their posts to perform such tasks. The only time the railroad would service the stairway was after a heavy snowfall. In such a case, the signal operator at the tower was authorized to call the chief dispatcher, who would then call the yard-

---

1. The plaintiff-appellee did not object to the trial court's finding her fifty percent negligent.

master at the east yard, who, in turn, would summon the track maintenance crew. The latter would clear the snow from the track switches, and while they were in the vicinity, they would make a path from the parking lot to the stairway, sweep the steps clear of snow, and, if necessary, spread salt on them.

The railroad states that the finding that it was negligent under the facts of this case is to make it an insurer of the safety of its employees contrary to well established law.

In its opinion, in which findings of fact and conclusions of law appear, the trial court stated: "But as trial judge, I conclude that on the night in question the steps amounted to a menace insofar as plaintiff is concerned. Ice on wooden steps is certainly foreseeable in the month of March in this district. After precipitation such as rain in the daytime, the accumulation of ice in the evening hours is a common occurrence in the month of March. The want of care on the part of the defendant is simply not providing, whether for plaintiff or other employees, ashes, sand or rock salt to apply to the steps when needed. * * It simply disregarded the common knowledge that wooden steps may become hazardous in this region in the wintertime because of ice and snow. * * * " The railroad does not quarrel with the trial court's observation that it is commonly known that wooden steps may become dangerous in the wintertime in the Pittsburgh area because of ice and snow. It argues, however, that it does not follow that an ordinarily reasonable, prudent person knows that he is required to put deicing or anti-slipping material on unprotected outdoor steps at various occasions in the wintertime, and whether

such material is required depends on the location of the steps and the frequency of their use. The railroad goes on to remind us that the mishap occurred within one hour and forty minutes after the onset of a freezing rain during the night, and that it was known that only one person besides the plaintiff would use the stairway during a sixteen-hour period.

It is well settled that a railroad is not an insurer of the safety of its employees. Nevertheless it does owe them the continuing duty of using due care in providing them with a reasonably safe place to work, and reasonably safe ingress and egress to that place. When an employee is injured, the test for determining the railroad's liability is to ascertain whether it has failed to exercise reasonable care under the circumstances. It will not be held liable for injuries resulting from causes which cannot be eliminated through use of due care. True, the railroad has no control over the vagaries of the weather or climatic conditions.[2] But there are a number of precautions, either in the form of "advanced protection" or "corrective action", which the railroad could have taken either to prevent ice formation on the stairway or to neutralize one of its well known harmful characteristics. Providing inexpensive deicing or anti-slipping material for the purpose of having it applied to the stairway is, in our opinion, the least the railroad could have done. The failure of the railroad to so provide was found by the trial court to constitute negligence. This finding was well within the province of the trial court to make. See McCray v. Illinois Central R.R.,[3] 12 Ill.App.2d 425 (1957), 139 N.E.2d 817, 821. Also see Anderson v. Elgin, Joliet and Eastern Ry. Co., 227 F.2d 91, 97

2. See Raudenbush v. Baltimore & Ohio R. R., 160 F.2d 363, 366 (3 Cir. 1947).

3. In this case, the employee, then 57 years of age, after working until 4:30 p. m., left the shop for home. He observed that the grounds of the railroad from the shop to the gate were covered with ice. "When he reached the * * * gate and entranceway to the defendant's premises he

observed ice over the entire sidewalk where it begins at the gate and the presence of this ice continued on the sidewalk all the way down to 95th Street. He observed ice on the road adjacent to and parallel with the sidewalk. Cinders were spread all over the ice on the road. The road and sidewalk are on the defendant's premises. The road and sidewalk * * * are the only method of ingress or egress

(C.A.7, 1955). If the observation that it is commonly known that wooden steps may become dangerous in the wintertime is unchallenged, then the time element of the mishap is immaterial. And we cannot say that the fact that only a few employees would use the stairway once or twice within a sixteen-hour period would absolve the railroad of its duty to those few as a matter of law.

The railroad contends also that the trial court's conclusion of liability was clearly erroneous because a causal connection between its alleged negligence and the plaintiff's injury had not been established. It bases this contention on two grounds: First, there is no evidence from which an inference can be drawn that if such material had been supplied, the plaintiff would have used it, and such use would have prevented her from being injured. And second, the trial court did not find that it was negligent for having failed to spread, as distinguished from failing to provide, deicing or anti-slipping material on the stairway.

■ Regarding the first ground, it is the railroad's omission that prevented plaintiff from showing that the material would have been inadequate to have prevented her slipping. Moreover, the trial court found that on the night in question "the step amounted to a menace insofar as plaintiff was concerned." If the railroad was of the view that plaintiff should have spread some material on the stairway before she descended, then it should have at least supplied the material, and also promulgated work rules requiring her to apply the material to the stairway. See Oliver v. Chesapeake & Ohio Ry. Co., 151 N.E.2d 371 (Ohio Ct.App.1956).

Here there was no evidence that the railroad work rules required her, in the course of her employment, to apply the material if it had been supplied. Implicit in the trial court's finding, we think, is the fact that if a sufficient amount of rock salt, sand, ashes or sawdust had been properly spread on the stairway, plaintiff would not have slipped. Had it been established that the material would not have prevented her from slipping, then the trial court would have been free to find that the railroad should have taken other precautions. The requirement that the railroad spread adequate material on an exposed stairway after a freezing March rain is not, as a matter of law, the outer limit of the duty owed by it to its employees to prevent their slipping on that stairway.

■ In answer to the second ground, we do not think the interpretation of the trial court's finding of negligence can, with reason, be limited to the one contended for by the railroad. On the issue of negligence the trial court concluded: "The want of care on the part of the defendant is simply not providing, whether for the plaintiff *or other employees*, ashes, sand or rock salt *to apply* to the steps when needed." (Italics ours.) Clearly, without someone having sprinkled it on the stairway, the mere presence of readily available material would not have required a finding of no liability in this case. No one at the signal tower had the authority to call the track maintenance crew under the weather conditions prevailing here, and the employee who was to be relieved by the plaintiff had no permission to leave his post in the tower until the plaintiff was in a position to

to the yard. * * * He testified that as he was walking through the gate he saw ice all over the sidewalk and no cinders. [There was testimony that the cinders were also spread on the walk.] * * * He fell on the sidewalk after walking on it about 15 feet. * * * He testified that there was * * * ice * * * before he went to work; that about noon it commenced raining and then freezing weather set in * * *." 139 N.E.2d, at p. 819. The Appellate

Court of Illinois, although it reversed the judgment in favor of the plaintiff and remanded the cause for reasons immaterial here, held that the trial court was right in submitting the issue of negligence to the jury, and that "the jurors, acting as reasonable men and women, would have the right to say that the failure to spread cinders or other material on the walk constituted negligence." (139 N.E.2d, at p. 821.)

assume her duties of operating the signal switches.

█ Finally, the railroad argues that to impose liability on it under the facts here present would require it to call out innumerable men on a moment's notice for the purpose of doing the impossible task of treating with chemicals "all exposed steps, walkways, yard surfaces, switches, engines, railroad cars and other working surfaces \* \* \* irrespective of the location and number of such surfaces." While this argument may be applied to the yard area or the total work area, it is certainly not unreasonable to require these steps in a steep descent which were provided for the only ingress and egress of employees to eliminate the hazard through rock salt, sand, ashes or sawdust which occasioned the plaintiff's injuries.

The judgment of the District Court will be affirmed.