Charles L. DAGOSTINE and
Emma Dagostine

v.

JOSEPH SCHLITZ BREWING CO., Win-
ston-Salem Southbound Railroad Co.,
Norfolk and Western Railroad Co.,
Western Maryland Railroad Co., Read-
ing Railroad Co., Lehigh Valley Railroad
Co., and Evans Products Co.

v.

ROSS DISTRIBUTION COMPANY and
Fruit Growers Express.

Civ. A. No. 77–1890.

United States District Court,
E. D. Pennsylvania.

Oct. 4, 1979.

Ronald W. Shipman, Easton, Pa., for plaintiffs.

J. D. Wilder, Philadelphia, Pa., for Evans Prod.

W. C. Worth, Jr., Allentown, Pa., for Schlitz.

Timothy B. Barnard, Media, Pa., Winston-Salem, co-counsel C. T. Toss, Winston-Salem, N.C., for Winston-Salem.

J. N. Ewing, Jr., Philadelphia, Pa. for Western-Maryland.

J. Paul Erwin, Jr., Philadelphia, Pa., for Reading Co.

J. D. DiGiacomo, Easton, Pa., for Fruit Growers.

H. P. Pudlin, Philadelphia, Pa., for Lehigh Valley.

## MEMORANDUM

TROUTMAN, District Judge.

During the early morning hours of July 21, 1975, plaintiff, Charles L. Dagostine, an employee of third-party defendant Ross Distribution Company, went to the Lehigh Valley Depot to unload a cargo of beer products, which had been shipped by rail. After completely inspecting the exterior of the boxcar, finding no defects and ascertaining that the seals on the exterior doors were still intact, plaintiff broke the seal on the exterior door, opened it and entered the boxcar. After some initial preparation he released the lever on the bulkhead door on the interior of the boxcar; one side released, but the other side did not. He then took a pipe wrench to release the bulkhead door. When he placed the wrench on the lever, the door sprang loose and pinned him against the other bulkhead door. Plaintiff brought this action, based on diversity of citizenship, to recover for personal injuries caused by the accident.[1]

Plaintiff named as defendants Joseph Schlitz Brewing Company (Schlitz), whose employees originally loaded the boxcar with beer products, Norfolk and Western Railroad Company (Norfolk), which owned the boxcar and provided it to Schlitz and Winston Salem Southbound Railroad Company (Winston), which began carrying the beer freight northward after the completion of the loading and sealing of the boxcar. Winston delivered the boxcar to defendant Norfolk, which transferred it to defendant Western Maryland Railway Company (Western Maryland) three days later in Hagerstown, Maryland. The same day Western Maryland delivered the boxcar to defendant Reading Railroad Company (Reading), which in turn delivered it to defendant Lehigh Valley Railway Company (Lehigh Valley) one day later. Lehigh Valley finally brought the boxcar to its destination in Easton the day of the accident.[2] Against each defendant plaintiff alleges negligence in loading or shipping the beer products.

All five railroad defendants now move for summary judgment, which may be granted when no genuine issues of material fact exist. Fed.R.Civ.P. 56(c) *Bishop v. Wood,* 426 U.S. 341, 347 n. 11 (1976), *Arnett v. Kennedy,* 416 U.S. 134, 139–40, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), *Goodman v. Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), *General Teamsters, Chauffeurs and Helpers, Local Union No. 249 v. Bill's Trucking Inc.,* 493 F.2d 956, 964 (3d Cir. 1974). Doubts are resolved against the moving party, *United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir. 1971), *Janek v. Celebrezze,* 336 F.2d 828, 834 (3d Cir. 1964), *Krieger v. Ownership Corp.,* 270 F.2d 265, 270 (3d Cir. 1959), who has the burden of demonstrating the justification for the motion. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *Krieger*

1. Plaintiff seeks to recover one million dollars on each of nine counts against the various defendants. Plaintiff's wife seeks to recover $50,000 on each count for loss of "consortium".

2. Defendant Schlitz impleaded third-party defendants Ross Distribution Company, plaintiff's employer, and Fruit Growers Express, the company which built the bulkhead into the boxcar. Defendant Evans Products Company designed and manufactured the bulkhead door.

*v. Ownership Corp.,* 270 F.2d at 270, *F. A. R. Liquidating Corp. v. Brownell,* 209 F.2d 375, 380 (3d Cir. 1954). When the movant has supported his motion with proper material, the party resisting the motion must adduce "specific facts showing that there is a genuine issue for trial", Fed.R.Civ.P. 56(e), *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 155, 20 L.Ed.2d 569 (1968), *Robin Construction Co. v. United States,* 345 F.2d 610, 613–14 (3d Cir. 1965), but the motion will be construed in a light most favorable to him. *Adickes v. S. H. Kress & Co.,* 398 U.S. at 157, 90 S.Ct. 1598, *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Plaintiffs, Schlitz and third-party defendant Evans, opposing the motions, concede that they have no direct evidence of any negligence by Reading, Lehigh Valley and Western Maryland. Nor do they suggest that these specific defendants had a duty to break the seal and inspect the interior of the boxcar. Instead they urge that the testimony of defendant Schlitz's employee, who ascribed the shifting of the load to "rough handling" creates an inference thereof. Therefore, they continue, the finder of fact could infer that defendant negligently handled the boxcar. Whether Western Maryland, Reading and Lehigh Valley transported the beer products either in a "rough handling" or "humping" manner so that the beer shifted within the boxcar and proximately caused plaintiff's injuries when he opened the seal, contend these parties, is a genuine issue of material fact that precludes granting of summary judgment.

■ In *Casella v. Norfolk & Western Railway Co.,* 381 F.2d 473 (4th Cir. 1967), plaintiff, injured by a bale of paper which fell on him while he was unloading cargo from a railroad car, relied solely on the speculation that en route the car had been "humped" and adduced no other evidence in support thereof. The court considered mere speculation insufficient;

even if it was proven that the [railroad] car was switched once more than ordinary carriage required there would still be no proof that one extra switching movement could or did destroy the door protection. Apart from his speculation, the plaintiff claims to have no available evidence of any fault on the part of [the railroad] which might have been a proximate cause of his injury.

*Id.* at 479. The court concluded that unprovable speculation would not support plaintiff's claim and that the trial court properly entered summary judgment for the railroad. In the case at bar, plaintiffs also rely on speculation that Reading, Lehigh Valley, or Western Maryland handled the beer products roughly.[3] Five carriers had possession of the boxcar during the four-day period; perhaps one or all of them were guilty of a "rough ride". But that possibility cannot support an inference that Reading, Lehigh Valley or Western Maryland negligently switched or humped the car and that these operations were a substantial factor in causing either the load to shift or the bulkhead door to be damaged.

Although there is no direct evidence of when the "rough handling" occurred or under which company's control the boxcar was when it occurred, defendant Schlitz also argues that this fact would not preclude a jury from finding that this cause, in the absence of others, (considering that accidents of this type do not normally occur), was the cause of the plaintiff's injury. This position is essentially the *res ipsa loquitur* doctrine, *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94 (1976). Further, the fact that there are multiple defendants and that each may have been a contributing or substantial cause does not affect the application of this doctrine to the facts in this case if the jury should so find. Finally, defendant Schlitz suggests that *Gilbert* overrules *Ambrose v. Western Maryland Railway Co.,* 368 Pa. 1, 81 A.2d 895 (1951), upon which Reading, Lehigh Valley and Western Maryland strongly rely.

---

**3.** "[O]rdinarily the requirement of such proof cannot be met by an inference of negligence drawn from the mere happening of an accident". *Sierocinski v. E. I. Du Pont De Nemours & Co.,* 118 F.2d 531, 535 (3d Cir. 1941).

■ Turning to Schlitz's last argument, the *Ambrose* court specifically stated that the doctrines of *res ipsa loquitur* and exclusive control were inapplicable to the *Ambrose* facts. In fact, the *Ambrose* decision turned on the question of what duty defendant owed to plaintiff. The court stated that

> [t]he sole question posed is . . . whether the evidence justified a finding that negligence on the part of the defendant was the proximate cause of the decedent's death. *The answer lies in the degree of care owed by the defendant to the plaintiff.* [emphasis added]

*Id.* at 7, 81 A.2d at 898. The court went on to find that defendant's duty was to make a reasonable inspection, one

> sufficiently thorough to ascertain whether there is any fairly obvious defect in its construction or state of repair which constitutes a likely source of danger . . [B]eing . . . under seal . . . [defendant was] neither authorized nor required to make

a minute and very close inspection. *Id.* at 8, 10, 81 A.2d at 898, 899. Otherwise stated, the proper duty of care which defendants Western Maryland, Lehigh Valley and Reading owed to plaintiff

> with respect to bulk commodities loaded by the consignor . . . [is] limited to the correction of defects observable upon a reasonable inspection of the exterior of the car from the ground, unless, of course, it has created, or has actual knowledge of, a latent defect. [footnotes omitted]

*Casella v. Norfolk & Western Railway Co.,* 381 F.2d at 476. A reasonable inspection does not include breaking the seal and de-

termining whether the boxcar has been improperly loaded inside. *Butler v. Norfolk Southern Railway Co.,* 140 F.Supp. 601, 605 (E.D.N.C.1956), *Smith v. Louisville & Nashville Railroad Co.,* 267 F.Supp. 716, 718 (S.D. Ohio 1966), *Blytheville Cotton Oil Co. v. Kurn,* 155 F.2d 467 (6th Cir. 1946), *Ambrose v. Western Maryland Railway Co.,* 368 Pa. at 8–10, 81 A.2d 895. *See also Lewis v. New York, O. & W. Railway Co.,* 210 N.Y. 429, 104 N.E. 944 (1914) (Cardozo, J.)

■ Several years later in *Gilbert v. Korvette's, Inc., supra,* when the Pennsylvania Supreme Court jettisoned effete distinctions among the doctrines of *res ipsa loquitur,* exclusive control and "an untitled evidentiary rule of simple circumstantial evidence" and replaced them with Section 328D of the Restatement of Torts Second,[4] the court did not abrogate or modify the standard of care articulated in *Ambrose* and owed by defendants to plaintiff in these circumstances. Although adoption of the Restatement evidentiary rule may affect plaintiff's circumstantial proof of defendants' putative negligence, it did not alter defendants Reading, Lehigh Valley and Western Maryland's duty to plaintiff. Subsection 1(c) of Section 328D provides that negligence by defendants may be inferred when, *inter alia,* the "indicated negligence is within the scope of the defendant's duty to the plaintiff". *Ambrose,* unchanged by *Gilbert* in this respect, indicates that the alleged source of plaintiff's harm, conditions inside the boxcar, fell outside the ambit of defendants' duty to inspect. Accordingly, defendants Reading, Lehigh Valley and Western Maryland's motions for summary judgment will be granted, for the opposing parties concede that they have no evidence of defendants' failure to fulfill their obligations to inspect the exterior of

---

4. which provides that

(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
(2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
(3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

the boxcar. With no issue as to a material fact, the entry of summary judgment is proper.

 However, defendant Norfolk, owner of the boxcar, and defendant Winston, the original carrier, are in different positions. Plaintiff's argument runs as follows: Norfolk as owner had a duty to inspect the boxcar prior to putting it into service and supplying it to Winston. Norfolk had an obligation to inspect not only the exterior of the boxcar but also the interior. Once the car was placed with Winston, Winston had the duty to inspect both the interior and exterior of the boxcar because it had not yet been sealed. Furthermore, neither Winston nor Norfolk took any steps to provide any device or hardware with which a bulkhead door could be wedged upon its opening when there was a risk of a shifted load. Nor did either defendant take any steps to provide warning that a device should be used to wedge the bulkhead door before releasing it. Defendants ignored all these precautions despite information known to defendants and promulgated by the American Association of Railroads. These standards indicated that there was a risk that a bulkhead door would move out of control upon release because of the weight of a shifted load.

Whether Winston and Norfolk knew, or should have known, of these precautionary measures and whether they acted in accordance therewith if such a duty existed are genuine issues of material fact which preclude granting summary judgment in their favor. Accordingly, defendant Winston and Norfolk's motion for summary judgment will be denied.