Oscar J. MEULLER and Marian Meuller

v.

JEFFREY MANUFACTURING CO.

Civ. A. No. 78–141.

United States District Court,
E. D. Pennsylvania.

July 25, 1980.

Joseph Lurie, Philadelphia, Pa., for plaintiff.

J. Paul Erwin, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Early in 1976 plaintiff, a maintenance man employed by Hofmann Industries, Inc.

(Hofmann) of Sinking Spring, Pennsylvania, fell through a three-foot square opening in the concrete slab floor of a foundry building owned by his employer. Plaintiff seeks to recover for his injuries under theories of simple negligence and strict liability. Restatement (Second) of Torts § 402A. Defendant,[1] which manufactured and designed the sand handling system involved in plaintiff's accident, now moves for summary judgment[2] on the grounds that it did not design, manufacture or sell any product which caused injury to plaintiff and that his injury resulted from an alleged defect in the construction and maintenance of a building, not a "product" within the meaning of § 402A.[3]

The sand handling system at issue actually consisted of a collection of conveyors, elevators, hopper and other devices arranged in a fashion to remove sand from an automatic gray iron molding machine (known as a spomatic), to recycle and return the sand to the molding machine for further use. One component of the sand handling equipment, a magnetic belt, extracted small pieces of scrap metal from the sand prior to reuse and collected these tailings in metal boxes. To enable Hofmann employees to lift these boxes out of the pit, where the magnetic belt is located, required making the opening through which plaintiff fell.[4] A steel plate, set into angle irons built into the concrete sides of the opening, covered it when not in use.[5] Hofmann purchased the automatic molding machine from a third party in 1960.[6] The size and complexity of the system made it necessary for Hofmann to build a substantial addition to its then-existing foundry to house the equipment. Hofmann constructed the addition, including the concrete slab floor, openings and protection therefor. Hofmann purchased the mold conveyor and sand handling equipment in 1961 from defendant, which assumed no responsibility for instal-

1. Defendant, an Ohio corporation, is now known as Jeffrey Manufacturing Division, Dresser Industries, Inc.

2. "[S]ummary judgment . . . may be granted when no genuine issues of material fact exist. Fed.R.Civ.P. 56(c), *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1974), *Goodman v. Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) . . . Doubts are resolved against the moving party, *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir. 1971), *Janek v. Celebrezze*, 336 F.2d 828 (3d Cir. 1964) . . . who has the burden of demonstrating the justification for the motion. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *Krieger v. Ownership Corp.*, 270 F.2d 265, 270 (3d Cir. 1959) . . . . When the movant has supported his motion with proper material, the party resisting the motion must adduce 'specific facts showing that there is a genuine issue for trial', Fed.R.Civ.P. 56 (e), *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), *Robin Construction Co. v. United States*, 345 F.2d 610 (3d Cir. 1965), but the motion will be construed in a light most favorable to him. *Adickes v. S. H. Kress & Co., supra, United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)." *Dagostine v. Joseph Schlitz Brewing Co.*, 478 F.Supp. 38, 39–40 (E.D.Pa.1979).

In the case at bar plaintiff argues that several genuine issues of material fact exist: whether defendant designed the sand handling equipment negligently, whether defendant advised Hofmann of proper safety devices to be used in conjunction with the system and whether defendant warned Hofmann of dangers attendance to use thereof. However, these issues presuppose a duty and its breach on the part of defendant. We have assumed for present purposes that defendant *did* owe Hofmann a duty and breached it. Therefore, no genuine issues of material fact obstruct the resolution of defendant's motion.

3. Resolving the issue of whether a building is a product within the meaning of § 402A is superfluous in light of our conclusion, *but see Lowrie v. City of Evanston*, 50 Ill.App.3d 376, 8 Ill.Dec. 537, 365 N.E.2d 923 (1977) and *Cox v. Shaffer*, 223 Pa.Super. 429, 302 A.2d 456 (1973).

4. *See* Deposition of Ralph P. Waters, a production supervisor at Hofmann Industries, at 11, 12 and 19.

5. *See* Deposition of Barry Boyer, a supervisor at Hofmann Industries, at 17, and Deposition of Brian Bohn, a superintendent at Hofmann Industries, at 12.

6. *See* Deposition of Allen O. Ernst, environmental manager and safety coordinator at Hofmann Industries, at 17.

lation.[7] Hofmann furnished not only the one-quarter inch plate to cover the opening for the tailings boxes [8] but also all concrete work, anchor bolts and curb angles.[9] The importance of this information lies in the fact that Hofmann designed and installed the opening where plaintiff fell.[10] Indisputably, defendant designed and supplied only certain components for the automatic molding system, none of which it installed in the foundry. Hofmann or others designed and furnished the building, cupola, monorail and spomatic molding system.[11] Defendant only indicated the size and location of openings necessary for the operation of the system and the location of anchor bolts necessary to support and secure the equipment. The manner in which employees removed tailings boxes from the pit remained strictly a matter for the purchaser, Hofmann, to determine.[12]

■ To recover under theories of either simple negligence or strict liability, plaintiff must establish that defendant manufactured a product which was defective at the time of sale in 1961 or failed in a duty to provide adequately for the guarding of that product. *See Vizzini v. Ford Motor Co.,* 569 F.2d 754 (3d Cir. 1977). Even assuming that defendant had a legal duty to warn plaintiff or Hofmann of any dangers connected with the operation of the sand handling system and that defendant breached that duty, the apparent negligence of Hofmann and/or its employees constituted a superseding cause of plaintiff's injury. True, a jury ordinarily determines proximate cause, but where the parties do not dispute the critical facts and only their legal effect remains in issue the court properly should rule on the question. *Schreffler v. Birdsboro Corp.,* 490 F.2d 1148 (3d Cir. 1974). A third person's failure to prevent harm may become a superseding cause

> where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person . . .

Restatement (Second) of Torts § 452(2). *See Griffith v. Wheeling-Pittsburgh Steel Corp.,* 610 F.2d 116 (3d Cir. 1979). Identifying what circumstances will shift the duty requires reference to the

> degree of danger and magnitude of the risk of harm, the character and position of the third person who is to take the responsibility, his knowledge of the danger and the likelihood that he will or will not exercise proper care, his relation to the plaintiff or to the defendant [and] the lapse of time . . .

---

7.  *See* Deposition of Leurence E. Fisher, a product manager for defendant, at 25.

8.  *See* Fisher Deposition, at 29 and Defendant's Exhibit 4.

9.  *See* Fisher Deposition, at 30 and Defendant's Exhibits 5, 6.

10.  *See* Fisher Deposition, at 8, 11, and 13:
Q.  Now, what is the drawing that you have before you?
A.  Sheet 12 is the floor plan showing the openings in the floor at foundry floor level, the pit outline for the pit underneath the floor that [Hofmann], the purchaser, would use to have their company or their subcontractor design the floor and the foundations for our equipment.
Q.  What was the purpose of the anchor bolt plan; why would [defendant] . . . prepare this anchor bolt plan?
A.  [Hofmann] had to provide themselves or subcontract the necessary work to supply the foundations in the building necessary for our equipment.
Q.  So, you provided them with the plan of where you wanted the anchor bolts and the setups that they Hofmann Industries, or the purchaser, would fabricate and install in accordance with your plan?
A.  We furnished them locations of anchor bolts and openings. It was their responsibility to design the concrete, design the openings to suit.
Q.  [W]as there much leeway left to the purchaser, as far as how the openings are to be designed?
A.  Yes. It's the customer's responsibility to design the opening and how he is going to implant his curbs, the size of the angles, and how he can coordinate those into the concrete.

11.  *See* Fisher Deposition, at 30–31.

12.  *See* Fisher Deposition, at 13.

Restatement (Second) of Torts § 452(2), comment f. Particularly where a substantial amount of time intervenes, the overtness of the danger, the nature of the product sold, the identity of the consumer, the relative abilities of the manufacturer and the employer to remedy the alleged defect and the nature and availability of the remedy should be considered as well as any other consideration which comports with the universally accepted policy of assigning and imposing ultimate liability for negligence upon the person primarily responsible therefor. *See Roe v. Bryant & Johnston Co.*, 193 F.Supp. 804 (E.D.Mich.1961). *Cf. Vizzini v. Ford Motor Co.*, 569 F.2d at 767 (" 'proximate cause' . . . is a flexible concept designed to effectuate varied policies that determine whom the law holds liable for harm suffered by the plaintiff").

In the case at bar fifteen years elapsed between the sale of the sand handling machine and the date of plaintiff's injury. Hofmann was plaintiff's employer and as such had a duty to keep the workplace safe and free from unreasonable danger and unnecessary risk. *See Industrial Union Department v. American Petroleum Institute*, —— U.S. ——, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980), *Kimbler v. Pittsburgh & Lake Erie Railroad*, 331 F.2d 383 (3d Cir. 1964), *Emig v. Erie Lackawanna Railway*, 350 F.Supp. 986 (E.D.Pa.1972), *aff'd*, 485 F.2d 679 (3d Cir. 1973). *See also* Occupational Safety & Health Act, 29 U.S.C. § 651 *et seq.*, and Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* Certainly an open hole would alert the prudent employer to the need to prescribe, implement and follow sound safety regulations. In fact, Hofmann had issued regulations which its employees apparently failed to obey on the day plaintiff fell. Hofmann guarded the opening with a four-sided railing designed to fit over the opening when the steel cover was removed. This "cage" had no bottom or top so that employees could lift the tailings boxes out of the pit by means of an overhead hoist and chain arrangement.[13] Hofmann instructed employees to protect the opening when in use.[14] At least one of plaintiff's co-workers observed the cage in the vicinity of the accident but recalled that it was not then in use.[15]

Moreover, Hofmann was not an unsophisticated "consumer" in the usual sense of the word. Rather, it was a large corporation engaged in the production and fabrication of steel and iron products. Hofmann employed a safety director and safety committee.[16] Thus, the present circumstances differed from the usual § 402A case with a "standard production item sold to the general public which malfunctioned or otherwise evidenced a manufacturing defect". *Schreffler v. Birdsboro Corp.*, 490 F.2d at 1152. Clearly, Hofmann was or should have been aware of the manifest danger of an unprotected opening.[17] *Cf. Gordon v. Niagara Machine & Tool Works*, 574 F.2d 1182 (5th Cir. 1978) (the danger zone of a manually operated press machine). Hofmann, plaintiff's employer and owner of the machine for fifteen years, stood in a position to remedy or at a minimum cope effectively

---

**13.** *See* Waters Deposition, at 21, 54–55.

**14.** *See* Waters Deposition, at 70, Boyer Deposition, at 23–24, Bohn Deposition, at 26–27, Deposition of John Waechli, a production supervisor at Hofmann Industries, at 12, and Deposition of Harold Showalter, a manufacturing engineer at Hofmann Industries, at 8.

**15.** *See* Bohn Deposition, at 7–8. *See also* Plaintiff's Deposition, at 36 and Showalter Deposition, at 8.

**16.** *See* Waters Deposition, at 55–56:
Q. Now is there someone in this plant designated as Director of Safety or some similar title?
A. Yes, we have a Safety Director.
Q. What are the duties of the Safety Director?
A. [W]e have safety committees comprised of union and company personnel who tour the plant on occasions, scheduled occasions and make their recommendations to the company. These recommendations are usually carried out if they are found to be necessary by the Maintenance Department. . . . [T]here are meetings of the Safety Committee once a month for each plant and then every other month a joint Safety Committee meeting, which involves both plants.

**17.** See Waters Deposition, at 24, Plaintiff's Deposition, at 39 and Boyer Deposition, at 7.

with the problem. *See* W. Prosser, *Handbook on the Law of Torts*, 273 (4th ed. 1971). In other words,

the practical means to protect the working men at the plant . . . was capable of implementation by [the employer] without any advice, knowledge or assistance from [the manufacturer]. . . . [L]ending strength to the superseding cause theory is the evidence that there was [a long] interval between the date of sale and the accident, during which time [the employer] was in sole possession and control of the equipment and, in view of its obligations as an employer, justifiably would be expected to take necessary steps for the safety of its employees.

*Schreffler v. Birdsboro Corp.*, 490 F.2d at 1154. In the case at bar the intervention of fifteen years between the date of sale and injury, the atypical nature of the § 402A product and sale, the obvious nature of the danger, the ready ability of the employer to remedy the danger without technical assistance or advice from the manufacturer, the indisputable duty of the employer to keep the workplace safe and the employer's sole possession and control of the equipment for fifteen years created circumstances which shifted the duty from the manufacturer to the employer. As a matter of law, defendant's conduct cannot be said to be the proximate cause of plaintiff's injury. Therefore, defendant's motion for summary judgment will be granted.