**Jason W. KLINE, Plaintiff,**

v.

**ABCO ENGINEERING CORP., et al., Defendants.**

No. Civ.A. JFM–96–2822.

United States District Court, D. Maryland.

Oct. 20, 1997.

David M Kopstein, Washington, DC, for plaintiff.

James W. Bartlett, III, Carrie L. Blackburn, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, MD, John Schneider, Hardwick & Harris, Baltimore, MD, for defendants.

## MEMORANDUM

MOTZ, District Judge.

Plaintiff, Jason W. Kline, has brought this products liability action against defendants ABCO Engineering Corp. ("ABCO") and Steel Systems Equipment, Inc. ("SSE").[1] The defendant companies are involved in the design, manufacture and sale of large conveyor machines known as "stackers." Plaintiff alleges that the stacker owned by his employer, Laurel Sand & Gravel ("LS&G"), was defective and unreasonably dangerous. Defendants have moved for summary judgment. Their motion will be granted.

### I.

On September 13, 1993, Jason Kline took a job at the Barrick Quarry in Woodsboro, Maryland, which is owned by LS&G. Kline was nineteen years old at the time. He had

---

1. Plaintiff's claims against a third defendant, Steel Systems Installation, Inc., were dismissed with prejudice on or about June 2, 1997.

a high school diploma, but could not read. Prior to his employment at LS&G, Kline's experience with mechanics included auto repair and race car driving.

LS&G hired Kline to clean the grounds and perform small maintenance tasks. On his first day, Kline's supervisors showed him the quarry's stackers, which are used to transport crushed rock. The supervisor told Kline that the conveyors were not to be shut down during the working day unless no workers were available to run the machines or something completely prevented the belt from turning. According to a supervisor, if Kline found a roller that was jammed with ice or mud, he was supposed to take a hammer and knock the ice or mud out of the bearings. One supervisor demonstrated this process for Kline by reaching around the structural truss of the conveyor until his arm was inside the machine up to his elbow, then hitting the stuck roller with a hammer while the conveyor belt was running. The day after he started work, Kline signed a statement that he had received, read, and understood LS&G's Safety Manual, which states in pertinent part that "electrical breakers of moving equipment shall be locked out for any maintenance exposing a person to a hazardous condition." Safety Manual at 7.

Before delivering the stacker to LS&G, ABCO had attached metal and adhesive warning labels cautioning users to turn off the machine before attempting maintenance. Throughout Kline's employment, the conveyor displayed those warning stickers, though some pieces of the labels had worn away. At least one of the warning signs bore a picture of a hand being caught between rollers. Kline concedes that he did not try to read the warnings at any time during his employment, and that he did not notice the picture. Kline admits that he knew that hitting a stuck roller with a hammer would be dangerous, but felt that the danger must be minimal because his employer instructed him to do it.

During his more than three weeks of employment, Kline did not see anyone else use a hammer to free a jammed roller. However, on October 7, 1993, Kline discovered a stuck roller about five feet off the ground. Kline inserted his entire forearm into the truss surrounding the machine and hit the bottom of the roller with a hammer. The roller began rotating unexpectedly, and Kline's forearm became caught between the roller and the moving belt. The conveyor did not have an emergency stop system. Kline had to wait about a minute before he could extricate his arm from the machine. He suffered severe injury to his hand and arm as a result.

## II.

Kline alleges that the stacker was defective because it lacked sufficient guards and emergency stops, and because its warning labels were inadequate. For the purposes of this motion, this Court will assume that the design of the conveyor was in fact defective. The issues raised are whether defendants' asserted defenses defeat plaintiffs claims as a matter of law.

### A.

█ Defendants contend that Kline is precluded from recovery under Maryland law because he assumed the risk of injury. *See Ellsworth v. Sherne Lingerie, Inc.,* 303 Md. 581, 597, 495 A.2d 348, 356 (1985) (noting that assumption of risk may be issue in strict products liability case). For summary judgment to be granted, defendants must prove three elements: (1) that Kline actually knew and appreciated the risk of injury, (2) that Kline's decision to encounter the known risk was voluntary, and (3) that Kline's decision to encounter the known risk was unreasonable. *See id.* at 597–98, 495 A.2d at 356.

█ To prove Kline's knowledge of the risk, defendants produced his deposition testimony, in which he admitted that he knew it was dangerous in the area near the roller and moving belt. Pl.'s Dep. at 158. Kline's argument that he did not know and appreciate the *particular* risk that his arm would become trapped in the belt is not persuasive. In his motion opposing summary judgment, Kline asserts that he thought the only risk was momentary contact with the moving belt. However, no deposition testimony or affidavits support the allegation that Kline only knew of a small risk of momentary contact. From his previous experience with moving

belts, it is likely that he knew that becoming caught between the belt and rollers was a real possibility. Also, no Maryland case law requires that the knowledge or appreciation of the risk involve foreseeing the specific injury or accident that actually results from the dangerous condition.

■ Despite Kline's knowledge and appreciation of the risk, defendants' assumption of the risk defense does not merit summary judgment because there is an issue of fact as to whether Kline voluntarily encountered the known risk. *See Ellsworth,* 303 Md. at 598, 495 A.2d at 356. Kline contends that his actions were not voluntary because he would not have hit the roller with the hammer if his employer did not command him to do so. An act is not automatically involuntary because it is attributable to an employer's direction. *See Burke v. Williams,* 244 Md. 154, 158, 223 A.2d 187, 189 (1966). An act commanded by an employer may be voluntary if "the employee is given a clear and reasonable choice either to act or not act, and then chooses willingly to act." *Martin v. ADM Partnership,* 106 Md.App. 652, 661, 666 A.2d 876, 881 (1995). In this case, there is a factual dispute as to whether Kline had a "clear and reasonable choice" other than obeying his supervisor's instructions. Kline argues that he had to hammer the roller in order to adequately perform his duties. ABCO contends that Kline could have opted to report the stuck roller to the supervisor (as other employees had been instructed to do) or to shut down the machine. In light of this factual dispute, a jury would have to consider whether Kline voluntarily assumed the risk of injury.

---

2. Defendants focus their misuse arguments on LS & G's actions, not Kline's actions, because Kline asserts that he blindly followed LS & G's instructions. LS & G ignored the manufacturers' explicit written cautions, and that disregard was the proximate cause of Kline's injury.

3. Kline's claim is effectively paradoxical. If the jury were to find that Kline acted independently of his employer's instructions, then Kline voluntarily assumed the known risk of injury. If the jury were to find that Kline merely followed LS & G's instructions to hammer the stuck roller, then those instructions and the resulting misuse

## B.

■ Despite the valid dispute about Kline's assumption of risk, his products liability claim against ABCO and SSE is deficient because LS&G's instructions were an intervening cause of his injury.[2] "[I]f the Court can say as a matter of law that the plaintiffs' manner of use of the product cut off the chain of proximate causation, the defendant is entitled to summary judgment." *Higgins v. E.I. Dupont de Nemours & Co., Inc.,* 671 F.Supp. 1063, 1066 (D.Md.1987). Misuse, which includes failure to follow a manufacturer's warnings, bars recovery for a products liability claim. *See id.*

■ LS&G's instructions resulted in misuse because LS&G and Kline failed to follow the provided warnings.[3] A misuse is a use that is not reasonably foreseeable by the manufacturer. *See Ellsworth,* 303 Md. at 594, 495 A.2d at 354. In light of the posted warnings and the clear cautions in ABCO's Safety Manual, it was not reasonably foreseeable to defendants that an employee would strike the rollers with a hammer, nor was it reasonably foreseeable that an employer would instruct its employee to do so. The fact that ABCO had heard of other injuries from moving conveyor belts does not mean that defendants could reasonably foresee that a user would violate the explicit written warnings affixed to one of its stackers and reiterated in the Safety Manual. *Cf. Simpson v. Standard Container Co.,* 72 Md. App. 199, 206–07, 527 A.2d 1337, 1341 (1987) (noting that seller may reasonably assume that its warnings will be obeyed).

■ According to Kline, the LS&G supervisor instructed him to violate the clearly posted warnings.[4] Though some of the

---

of the machine were an intervening cause of Kline's injury. Kline's products liability claim must fail as a matter of law because one of the two defenses bars his recovery.

4. Kline's fundamental contention is that the manufacturers had a responsibility to warn the quarry workers directly because they could reasonably foresee that LS & G, in light of economic considerations, would instruct its employees to misuse the product. In fact, the law makes the opposite assumption, since the "sophisticated user" defense allows a manufacturer to antici-

edges of the warnings were frayed, the remaining signs tell employees to "stop engine or disconnect power, and wait for all movement to stop before cleaning, inspecting or repairing machine," and to "switch off and disconnect power source before servicing or inspecting."[5] One label depicts a hand caught between rollers. In his deposition, Kline admitted that he did not try to read the posted signs, nor did he notice the warning with the picture of the crushed hand. Pl.Dep. at 53.

In addition, the ABCO Parts and Service Manual warns several times that the conveyor must be shut down before maintenance or adjustment.[6] The Manual specifically warns of the danger of getting "caught between the belt and idler or caught by a belt fastener" if someone tries to adjust the rollers with the belt moving. After receiving the Manual, LS & G was clearly aware of the manufacturers' warnings to shut down the machine before maintenance. The manufacturers, then, "provided adequate warnings which went unheeded." *Simpson*, 72 Md. App. at 207, 527 A.2d 1337. "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." *Id.* at 206–07, 527 A.2d at 1341 (*quoting* Restatement (Second) of Torts § 402A comment j). LS & G's failure to obey the manufacturers' cautions by advising its employees to repair the machine with the belt running is an intervening cause that relieves the manufacturers of liability. Any design defect that may have existed was not the proximate cause of Kline's injury.

---

pate that an employer will take primary responsibility for protecting the safety of its employees.

5. The deterioration of the warning labels is not attributable to the manufacturers. *See Holman v. Mark Indus., Inc.*, 610 F.Supp. 1195, 1200–01 (D.Md.1985) (concluding that manufacturer could not foresee employer's failure to maintain machine and attached warnings and was therefore not the proximate cause of injury).

6. Under the "sophisticated user" defense, ABCO cannot be held liable for failure to warn Kline of

## III.

For these reasons, Defendants' summary judgment motions are granted. A separate order to that effect is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herewith, it is, this 20th day of October, 1997

ORDERED

1. Defendant ABCO Engineering Corp.'s motion for summary judgment is granted;

2. Defendant Steel System Equipment, Inc.'s motion for summary judgment is granted; and

3. Judgment is entered in favor of defendants against plaintiff.

---

the conveyor's dangers. *Cf. Higgins*, 671 F.Supp. at 1060–61 (extending sophisticated user defense to failure to warn claims in Maryland). By affixing the warning labels and providing LS & G, a sophisticated user of machinery, with a detailed safety manual, the manufacturers adequately discharged their duty to warn LS & G's employees. *Cf. Kennedy v. Mobay*, 84 Md.App. 397, 412, 579 A.2d 1191, 1199 (1990) (noting that manufacturer's warnings must be judged "in light of the circumstances").