Brenda G. SISCO, as widow for the wrongful death of Ricky Dwight Sisco, Plaintiff–Appellant,

Highways, Inc., Intervening Plaintiff,

v.

BROCE MANUFACTURING, INC., Defendant–Appellee.

No. 99–6311.

United States Court of Appeals, Sixth Circuit.

Jan. 10, 2001.

Before GUY and NORRIS, Circuit Judges; and HOOD, District Judge.[*]

PER CURIAM.

Ricky Dwight Sisco was fatally injured in a work-related accident when he jumped from the self-propelled highway sweeper that he was driving and hit his head on the

---

[*] The Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation.

pavement. In this wrongful death action against Broce Manufacturing, Inc., the manufacturer of the sweeper, plaintiff Brenda G. Sisco, Ricky's widow, appeals the award of summary judgment for Broce. She argues that the district court erred when it concluded that the proximate cause of Ricky's death was his employer's failure to remedy a known, serious problem with the sweeper's brakes, rather than any design or manufacturing defect by Broce. After a review of the record and arguments presented on appeal, we affirm.

## I.

In 1987, Broce manufactured the RJ–300 self-propelled highway sweeper, also known as "the Broce broom" or "the broom." It weighed approximately 4,800 pounds, and it was equipped with a John Deere engine and a hydrostatic transmission with a three-speed gear box. The top speed of the broom was approximately 35 miles per hour. Directional control of the broom was achieved with the hydrostatic transmission controlled by a foot pedal located near the operator's right foot. Pressing forward on the pedal directed the broom forward, and when the pedal was released, the pedal returned to the neutral position. If the control pedal was released while traveling, however, the broom slowed down; this aspect of the broom was referred to as the "dynamic braking system." The dynamic braking system worked only when the transmission was in gear; if out of gear, the broom's wheels were able to freewheel, and the broom would have to be stopped and put back into gear. The broom was also equipped with four-wheel hydraulic brakes and a mechanical parking brake, which activated the rear brakes.

Highways, Inc., a road construction company engaged in the business of paving, grading, and bridgework, purchased the broom from a third party on July 16, 1987, and used it to sweep away rocks and other debris from the roadway.

On May 17, 1996, Ricky, then a Highways employee, was operating the broom on a road resurfacing job. As he drove the broom down a long, steep hill, the broom began to go out of control, and Ricky jumped off, hit his head on the pavement, and died. Days afterward, the Tennessee Department of Labor Occupational Safety and Health Administration determined that the hydraulic and parking brakes were inoperable at the time of the accident, issued a citation against Highways, and imposed a fine of $4,000.

On Ricky's behalf, plaintiff sought and received workers' compensation benefits from Highways for his death. Plaintiff also sued Broce in federal court for its alleged defective design and manufacture of the broom. She claimed that the hydraulic and parking brakes were not properly shielded from the harsh construction environment, and that a latent defect existed in the gear box which caused it to jump out of gear. Broce asserted in response that Highways' failure to maintain the broom caused Ricky's death. Plaintiff then added Highways as a defendant, recognizing that it was likely immune from suit under the workers' compensation laws. Highways was later dismissed from the action on that basis.[1] Highways remained in the action as an intervening plaintiff

---

1. Tennessee recognizes an "intentional tort" exception to workers' compensation immunity. To assert it, plaintiff had to show that Highways *actually intended to injure* Ricky. See *Coffey v. Foamex L.P.,* 2 F.3d 157, 160–61 (6th Cir.1993). Plaintiff made no such allegation against Highways, and neither plaintiff nor Broce offered evidence showing that Highways had such an intent.

asserting its right to subrogation for the benefits it paid to plaintiff under the workers' compensation laws. Broce then moved for summary judgment arguing that Highways' failure to maintain the broom was the cause of Ricky's death.[2] The district court agreed, and this appeal followed.[3]

## II.

We review *de novo* the grant of summary judgment for Broce. *See EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1093 (6th Cir.1998). Plaintiff contends that the district court erred in ruling as a matter of law that she could not prove that Broce's design and manufacture of the broom caused her husband's death, because the issue of which party caused his death should be decided by a jury. While she rests this argument, in large part, on the "trend" in Tennessee case law that considers "intervening cause" a jury question, she admits that courts can identify the cause of an injury as a matter of law in a proper case. *See, e.g., Whitehead v. Dycho Co.*, 775 S.W.2d 593, 599 (Tenn.1989) (affirming grant of summary judgment in favor of manufacturer when employer's actions were deemed the proximate cause of employee's injury as a matter of law). *See also Kline v. ABCO Eng'g Corp.*, 991 F.Supp. 747, 750–51 (D.Md.1997) (any design defect with stacker conveyor machine held not to be the proximate cause of employee's injury when employer ignored manufacturer's explicit instructions). *Cf. Lynch v. Norton Constr., Inc.*, 861 P.2d 1095, 1099–1100 (Wyo.1993) (summary judgment in

favor of contractor of sidewalk affirmed when employer's failure to repair the obviously dangerous condition of the sidewalk, after receiving several complaints about its condition, constituted an intervening cause of any negligence on the part of contractor). Based upon the unique facts of this case, the district court properly concluded that plaintiff could not prove that Broce's alleged defective design or manufacture of the broom was the proximate cause of her husband's death, because Highways' failure to maintain the broom was the cause.[4]

In order for the intervening act of Highways' failure to maintain the broom to break the chain of causation between Broce's purported defective design or manufacture of the broom and Ricky's death, the act "must be sufficient itself to stand as the cause of the injury, and be one but for which the injury would not have occurred." *Underwood v. Waterslides of Mid–Am., Inc.*, 823 S.W.2d 171, 180 (Tenn.Ct.App.1991). If the act merely accelerates a prior cause that was sufficient to cause the injury, the prior cause will remain the proximate cause. *See id.* The essence of this rule in Tennessee is "whether the subsequent successive acts and injuries were probable and therefore to be anticipated." *Id.* A review of the record reveals that Highways' failure to maintain the broom was not probable or likely to be anticipated.

First, Highways appears to have all but ignored the explicit maintenance instructions provided in the broom's manual. Re-

---

**2.** Broce also argued that the broom was not defectively designed. The district court did not grant Broce summary judgment on that contention.

**3.** Highways did not file a notice of appeal or a brief on appeal.

**4.** Plaintiff herself concedes that Highways' negligence was "one of" the causes of Ricky's death.

garding the brakes, owners of the broom were instructed to do the following:

> [P]eriodically check the brake lines and hoses for leaks, and the master cylinder for proper fluid level. The front brakes pads and rear brake shoes should be checked frequently because of the dusty conditions they operate in. There is also a mechanical parking brake linkage which must be checked for proper adjustment.

The manual also recommended that the following take place on a daily basis:

> 1. Visually inspect entire machine for damage and/or fluid leaks.
>
> . . . .
>
> 5. Insure the following items are installed and in good operating condition: . . . rubber rock guard.[5]

The last time Highways installed new front brake pads on the broom was on October 22, 1994. No other record of maintenance on the hydraulic brakes or parking brake exists for almost nineteen months before Ricky's death.

Second and more significant is Highways' failure to repair the brakes despite repeated, actual knowledge of problems with them. As early as three weeks before Ricky's accident, his foreman at Highways knew that the hydraulic brakes on the broom were not working. No action was taken by Highways to fix them at that time. Then, one week before Ricky's death, the hydraulic brakes gave out when another Highways employee was operating the broom. The employee reported this incident to his supervisor; still, no action was taken at that time. Then, the day before Ricky's accident, another broom operator told her supervisor that the hydraulic brakes were not working and that the parking brake was just a "floppy handle."[6] Again, the broom was not taken out of service to be repaired, and the employee parked the broom for Ricky's use the following day.[7] Under these circumstances, Broce could not reasonably have foreseen that Highways would fail to repair the broom's brakes, and as a result the chain of causation was broken. While owner negligence in maintaining the broom is arguably foreseeable, the failure of Highways to take the broom out of service when it knew the brakes were not working is not forceable, and this was the proximate cause of Ricky's death.

Plaintiff argues strenuously that Broce did anticipate that Highways would not repair the hydraulic brakes on the broom because some owners of the broom were known not to repair them. As the district court correctly found, however, Broce's general knowledge that *some* owners of

---

5. Broce maintains that the broom was equipped with a rubber rock guard stretching the width of the broom in front of the broom's roller core, which protected the broom's front hydraulic brake lines. In contrast, plaintiff claims that the guard was not present at the time of manufacture. Despite their competing views, it is beyond dispute that no such guard was in place on the broom on the date of Ricky's death. Still, according to Broce, a replacement guard was available to Highways if it had requested one. The portion of the manual advising owners of the broom to inspect the guard on a daily basis should have caused Highways to obtain a guard from Broce if, in fact, one did not exist when it was purchased in 1987. This, Highways did not

do and stands as another example of its failure to maintain the broom.

6. Apparently, Highways had dismantled the parking brake with no intention of repairing it. Neither party contends that the parking brake, if operable, could have stopped the broom on its own; however, it could have assisted with the stopping of the broom.

7. Since the broom was purchased in 1987, operators of the broom also experienced it "jumping out of gear" on various occasions, thereby rendering the dynamic braking function inoperable.

the Broce broom failed to repair the hydraulic brakes does not make Highways' failure to maintain them, under the specific facts of this case, reasonably foreseeable. *See Kline,* 991 F.Supp. at 750 (fact that manufacturer had heard of other injuries from component of machine does not mean it could reasonably foresee that user would violate the explicit written warnings affixed to its machine and reiterated in its manual). Here, where Highways possessed actual knowledge that the hydraulic brakes failed three weeks before, one week before, and one day before the accident that resulted in Ricky's death. Broce could not reasonably have anticipated that Highways would ignore these warning signs and continue to allow its employees to operate the broom. *See Underwood,* 823 S.W.2d at 180 ("one is not required to anticipate and provide against what is unusual or unlikely to happen").

Section 452 of the Restatement of Torts provides further support for summary judgment in Broce's favor:

> Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

RESTATEMENT (SECOND) OF TORTS § 452 (1965). The comment to that section expands upon this principle:

> [T]he circumstances may be such that the court will find that all duty and responsibility for the prevention of the harm has passed to the third person. It is apparently impossible to state any comprehensive rule as to when such a decision will be made. Various factors will enter into it. Among them are the degree of danger and the magnitude of the risk of harm, the character and position of the third person who is to take

the responsibility, his knowledge of the danger and the likelihood that he will or will not exercise proper care, his relation to the plaintiff or to the defendant, the lapse of time, and perhaps other considerations. The most that can be stated here is that when, by reason of the interplay of such factors, the court finds that full responsibility for control of the situation and prevention of the threatened harm has passed to the third person, his failure to act is then a superseding cause, which will relieve the original actor of liability.

*Id.* § 452(2) cmt. f. An analysis of these factors shows that Highways alone, and not Broce, was in the position to prevent Ricky's accident.

■ As his employer, Highways had a duty to create a safe working environment for all of its employees. *See Schreffler v. Birdsboro Corp.,* 490 F.2d 1148, 1154 (3d Cir.1974) (directed verdict for manufacturer affirmed where six years passed since equipment was in manufacturer's control, during which time employer was in sole possession and control of the equipment and in view of its obligations as an employer to take steps for the safety of its employees); *Meuller v. Jeffrey Mfg. Co.,* 494 F.Supp. 275, 278 (E.D.Pa.1980). *See also* 63 AM.JUR.2D *Products Liability* § 35 (1996) ("The failure of an employer to provide a safe work place for its employees, to provide adequate safety devices, or to warn employees of hazards involved in equipment used at the work place may constitute a superseding cause relieving the product seller or manufacturer of liability.")

As the broom's owner since 1987, Highways was the only entity in a position to maintain it. Highways' own mechanics even testified that they could have repaired the hydraulic brakes, and plaintiff's sole expert witness admitted that the

brakes were not operational due to poor maintenance.[8] It is undisputed that if the hydraulic brakes were operational on the date of Ricky's death, the accident could have been avoided. Despite Highways' actual knowledge of the problems with the brakes and its ability to fix them, this was not done. And Broce, who had no contact whatsoever with the broom for almost ten years before Ricky's death, was never notified of any of the problems Highways was having with the broom's brakes. *See Meuller, supra* (manufacturer of machine granted summary judgment in products liability action when plaintiff's employer and owner of machine for fifteen years stood in the position to remedy the problem). *See also Whitehead,* 775 S.W.2d at 600 (when manufacturer had no reasonable access to warn employee, summary judgment in favor of manufacturer on failure to warn claim affirmed). *Cf. Westfield Ins. Co. v. HULS Am., Inc.,* 128 Ohio App.3d 270, 714 N.E.2d 934, 945 (Ohio Ct.App.), *appeal dismissed,* 83 Ohio St.3d 1460, 700 N.E.2d 877 (Ohio 1998) (mall owner's failure to repair roof or to warn mall tenants of the defect in the roof constitutes an intervening, superseding cause of the injury, which removes the negligent effect of the roof manufacturer's failure to warn).

AFFIRMED.

---

**8.** This testimony defeats plaintiff's claim that the brakes were essentially "unmaintainable" based upon Broce's supposed failure to prop-

erly protect them from the harsh construction environment.