Nancy V. DAY and Norman D. Day

v.

VOLKSWAGENWERK
AKTIENGESELLSCHAFT.

VOLKSWAGEN OF AMERICA, INC.

v.

Frank PAPARO.

Civ. A. No. 74–1959.

United States District Court,
E. D. Pennsylvania.

Aug. 24, 1977.

James J. McCabe, Jr., and Carl N. Martin, II, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

Edward W. Madeira, Jr. and Stephen S. Phillips, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

Curtis P. Cheyney, III, Swartz, Campbell & Detweiler, Philadelphia, Pa., for third party defendant, Frank Papero.

MEMORANDUM

McGLYNN, District Judge.

This case arose out of an intersectional collision in which plaintiffs' 1968 Volkswagen Type II "Microbus" van was struck in the area of the driver's door by a 1967 Ford which had disregarded a red traffic signal and which was travelling at a speed estimated at 35 to 40 miles per hour. As a consequence, plaintiff suffered serious injuries to her neck and spine, which resulted in

partial paralysis, some sensory impairment, and diminished breathing capacity, all of a permanent nature.

Prior to the institution of this action, plaintiffs' claim against the driver of the Ford, Frank Paparo, was settled for $100,000, the maximum coverage under his liability insurance policy. The claim against the Volkswagen defendants focuses upon allegations that the van was defective when sold to the Days in that it was not equipped with shoulder restraints, and that defendants failed to warn of the vehicle's inherent dangers.

After a lengthy trial, in response to written interrogatories, the jury specifically found that the subject van was not defective by virtue of the absence of shoulder restraints, and that defendants were not negligent in failing to install such equipment. Plaintiffs move now for a new trial. For the reasons hereinafter set forth, the motion will be denied.

Plaintiffs assign error to the refusal of the Court to allow evidence on the issue of failure to warn, and the refusal to charge the jury on that theory of liability. Plaintiffs argue that Volkswagen knew of the results of crash-tests indicating the danger of serious injuries in the event of a front-end collision, but nevertheless failed to warn of the necessity of installing and utilizing the optional shoulder restraints. In support of their argument, plaintiffs cite *Berkebile v. Brantly Helicopter Corp.*, 225 Pa.Super. 349, 311 A.2d 140 (1973) [*Berkebile I*], *Greiner v. Volkswagenwerk, AG*, 540 F.2d 85 (3d Cir. 1976), and Restatement (Second) of Torts § 402A, comments j and k (1965).

In *Berkebile I*, the manufacturer of a helicopter failed to warn the purchaser/pilot that in order for the craft's autorotation system to become operative, it must be activated within a few seconds of an engine failure. The Superior Court held that inadequate warnings of inherent or latent limitations of a product are sufficient to establish strict liability in tort even absent a defect in the design, manufacture, or preparation of that product, where the inade-

quate warning proximately caused an injury. In essence, it is the inadequacy or absence of the warning that renders the product defective. See also *Greiner v. Volkswagenwerk, AG, supra.*

Defendants do not dispute that no warning was given to the Days prior or subsequent to the purchase of their 1968 Microbus van. They assert that because the absence of shoulder restraints was obvious to anyone who entered the van, no such warning was required. This is particularly true, according to defendants, in light of the fact that the owner's manual supplied with the Days' van disclosed the presence of lap-type belts only, further stating:

"Each outboard seat is equipped with a third mounting point to facilitate subsequent installation of combination shoulder/lap belts."

Plaintiffs correctly cite the Restatement (Second) of Torts § 402A, comment j, relating to the duty of a seller to give warnings in order to prevent a product from being unreasonably dangerous. However, the comment further states:

"But a seller is not required to warn with respect to products . . . when the danger, or potentiality of danger, is generally known and recognized."

In *Dougherty v. Hooker Chemical Corp.*, 540 F.2d 174 (3d Cir. 1976), decided just one month after *Greiner*, the Court stated:

". . . [L]iability arises when the seller, having reason to know that its product is likely to be dangerous for its intended use, *and having no reason to believe that the intended user will realize its dangerous condition,* nevertheless fails to exercise reasonable care to inform the user of the dangerous condition." 540 F.2d at 177. [emphasis supplied]

██ Under the facts of *Berkebile I*, it was not obvious to the pilot that the autorotation system must be immediately activated to be effective. Similarly, in *Greiner* it was not obvious that the Volkswagen "Beetle" driven by plaintiff had a tendency to overturn. In the instant case, however, Volkswagen had every reason to believe

that the Days would be aware of the absence of shoulder restraints, since that fact was both obvious to the naked eye of anyone who made even a cursory inspection of the vehicle, and was specifically referred to in the owner's manual.

■ Plaintiffs further contend that because Volkswagen knew of the results of crash-tests conducted in 1966 indicating a danger of serious injuries in front-end collisions, this fact imposed a duty to warn of the general danger of the vehicle. However, this argument too must fail. It is, or certainly should be obvious to anyone purchasing or driving a rear-engine van of the type involved here, that passengers in the front seat of such a vehicle are much more exposed to the possibility of serious injury in the event of a front-end collision than they would be as passengers in the more conventional, front-engine mounted station wagon. Thus, the danger inherent in riding in the front seat of a rear-engine type vehicle is not a latent limitation requiring a warning of the risk involved.

Therefore, I am satisfied that the Court's refusal to allow the proffered evidence and to submit the warning issue to the jury was proper.

■ Moreover, I am unable to discern any evidence of a causal connection between the absence of warnings and Mrs. Day's injuries. Certainly the lack of warnings had no connection with the operation of the Paparo vehicle which unquestionably was the cause of the accident. And to suggest that had the warnings been given, the Days might not have purchased the van is pure speculation. See *Greiner v. Volkswagen* (on remand), 429 F.Supp. 495 (E.D. Pa.1977).

Finally, our research has not disclosed any cases in which a Pennsylvania Court has adopted the concept of enhanced injury in crashworthy or second accident cases. Compare *Huddell v. Levin,* 537 F.2d 726 (3rd Cir. 1976) (applying New Jersey law) with *Colosimo v. May Department Store,* 466 F.2d 1234 (3d Cir. 1972) (concurring opinion) (applying Pennsylvania law).

The leading Pennsylvania case on enhanced injury is *Barber v. Kohler,* 428 Pa. 219, 237 A.2d 224 (1968) in which the plaintiff, while working on a scaffold approximately three feet above the ground level, fell into an open hole which was in excess of sixteen feet in depth. Plaintiff contended that the defendant was negligent in failing to cover the hole so as to prevent persons such as plaintiff from falling into it. The Court stated that "while appellant may have sustained greater injuries by falling to the bottom of the hole than he would have received had the hole been covered, that has no bearing on the cause of the fall." The Court held that the defendants conduct was not the proximate cause of the plaintiff's injuries. And the Court also stated: ". . . a long line of cases in this court has held that the determination of the extent, if any, of incremental injury resulting from defendant's negligence is impossible to determine. This court has continually stated that, in a case like the instant one, a lessening of injury, absent defendant's negligence, is pure conjecture." 428 Pa. at 222, 237 A.2d at 226 (citation omitted).

But as Judge Aldisert noted in *Huddell:* "the crashworthy or second collision theory of liability is a relatively new theory, its contours are not wholly mapped, but one thing, at least, is clear: the automobile manufacturer is liable only for the enhanced injuries attributable to the defective product." 537 F.2d at 738.

Therefore, I will assume that the Pennsylvania Courts would adopt the *Huddell* analysis and allow recovery for enhanced injury in second accident cases. This offers little comfort to the plaintiffs however, for unlike the head rest in *Huddell,* it cannot be demonstrated how the presence of warnings would have lessened Mrs. Day's injuries. Without such proof, the jury cannot properly assess responsibility against Volkswagen. *Huddell, supra,* at 738. *Greiner,* of course, is distinguishable on this issue because in that case there was no problem of incremental damages—the injury having resulted from the inherent limitation of the vehi-

cle totally independent of any action on the part of a third party tortfeasor.