VAN BUSKIRK, Eleanor, Administratix of the Estate of Van Buskirk, Kenneth, and Van Buskirk, Eleanor, on her own behalf, et al.,

v.

CAREY CANADIAN MINES, LTD., et al.

Appeal of Stella J. NEAL, Admx. of the Estate of George R. Neal, and Stella J. Neal, on her own behalf, et al., in No. 82–1608.

Appeal of ASBESTOS CORPORATION, LIMITED, in No. 82–1622.

Nos. 82–1608, 82–1622.

United States Court of Appeals, Third Circuit.

Argued Nov. 15, 1984.

(Held C.A.V. for Supplemental Briefing).

Decided April 17, 1985.

Neil R. Peterson (argued), Greitzer and Locks, Philadelphia, Pa., Shor, Levin & Weiss, Wyncote, Pa., for appellant.

Frederic L. Goldfein (argued), Ellen Brown Furman, Ominsky, Joseph & Welsh, P.C., Philadelphia, Pa., for appellee Asbestos Corp., Ltd.

Anthony S. Minisi, Barry M. Klayman (argued), Philadelphia, Pa. (Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., of counsel), for appellee North American Asbestos Corp.*

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This is an appeal from the first multi-plaintiff asbestos litigation to be tried to a jury in the Eastern District of Pennsylvania. The complaint was filed by former employees of the Philip Carey Manufacturing Company, Inc. (Philip Carey), and their spouses or legal representatives, against five suppliers of asbestos and Celotex Corporation, the successor-in-interest to the employer. After a lengthy trial, the jury awarded compensatory and punitive damages to all but one of the non-settling plaintiffs. Plaintiffs and defendants filed cross-appeals, raising a myriad of issues. Because we find no reversible error, we will affirm the judgment.

## I.

Suit was originally filed on November 28, 1978 in the Court of Common Pleas of Montgomery County, Pennsylvania. On December 19, 1978, defendants removed the action to federal district court pursuant to 28 U.S.C. § 1441 (1982). The case falls under the federal court's diversity jurisdiction, and it is conceded that Pennsylvania law applies.

Philip Carey employed the workers whose claims form the basis of this lawsuit at its plant in Plymouth Meeting, Pennsylvania, for varying periods of time until it closed in 1962. Philip Carey manufactured asbestos-insulation products using raw asbestos fibers allegedly supplied by five asbestos companies—Asbestos Corp. Limited ("ACL"); Bell Asbestos Mines, Limited; Carey-Canadian Mines, Limited; Johns-Manville Corporation and several of its subsidiaries (collectively "Johns-Manville"); and North American Asbestos Corporation.

The action proceeded under theories of strict liability and negligence. Plaintiffs alleged, inter alia, that the defendants had failed to warn its employees of the dangers of asbestos, and that the employer's conduct was intentionally tortious and thus justified imposing damages beyond the scope of the Pennsylvania Workmen's Compensation Act, Pa.Stat.Ann. tit. 77, §§ 1–1066 (Purdon 1952 & Supp.1984–85). Defendants admitted that the employees involved in this suit had asbestos-related conditions caused by their exposure at the Philip Carey facility, but disputed liability.

A twenty-nine day trial on liability ensued. The district court characterized the issues as follows:

(1) whether [each] plaintiff, prior to November 28, 1976, knew or had reason to know that he had an asbestos-related condition caused by his exposure to asbestos fiber at Philip Carey's Plymouth Meeting manufacturing plant;

(2) whether the supplier defendants— Carey-Canadian, Asbestos Corp., Johns-Manville, NAAC and Bell Asbestos— were liable because they supplied asbestos fiber, without a warning of the dangers of asbestos exposure to the manufacturing plant, which proximately caused plaintiffs' injuries;

(3) whether Celotex was liable because Philip Carey intentionally failed to warn its former employees that they might have acquired an asbestos-related disease when Philip Carey officials had been advised by Dr. Thomas F. Mancuso, in October, 1963, that its former employees should be informed of this danger; and

---

* North American Asbestos Corporation filed a related appeal, No. 82–1625, but settled shortly after oral argument.

(4) whether the conduct of Philip Carey, whether negligent or intentional in failing to warn, was a superseding cause for any injuries sustained by plaintiffs after October 1, 1963.

*Neal v. Carey-Canadian Mines, Ltd.,* 548 F.Supp. 357, 366 (E.D.Pa.1982).

The jury's verdict was summarized by the district court as follows:

(1) all of the claims except that of George Neal were not barred by the Pennsylvania statute of limitations;

(2) all of the supplier defendants, except Bell Asbestos, were liable under § 402A products liability and negligence principles for the asbestos-related diseases suffered by each plaintiff;

(3) Celotex was liable for the aggravation of each plaintiff's injuries because of its intentional failure to warn;

(4) Celotex and Johns-Manville were additionally liable for punitive damages because of their outrageous conduct; and

(5) Celotex's conduct was not a superseding cause of each plaintiff's injuries suffered after October 1, 1963.

*Id.* at 366.

After the jury had made its liability determinations, separate trials to determine damages were held for each plaintiff;[1] the jury awarded damage verdicts ranging from $7,000 to $477,000, with the average approximately $150,000. *See id.* at 366 n. 4 (listing damages awards for each plaintiff). Plaintiffs and several defendants then moved for new trials or judgments n.o.v., and all post-trial motions were denied.

**1.** Nine of the twenty-four original plaintiffs either settled or had their claims dismissed prior to trial: several additional suppliers were also dismissed prior to trial.

**2.** Both ACL and Johns-Manville requested that we hold the entire appeal in abeyance until the stay as to Johns-Manville is lifted in order that Johns-Manville may participate in the appeal. While we understand that Johns-Manville, as joint tortfeasor with ACL, has an interest in having the entire appeal stayed, we believe that the balance of hardship weighs in favor of the plaintiffs, who are suffering from incurable and often fatal diseases, and for whom the possibili-

■ Plaintiffs and defendants filed timely appeals. While the appeals were pending, several defendants—Celotex; Carey-Canadian Mines; and North American Asbestos Corporation—settled. Johns-Manville's appeal was stayed pursuant to the automatic stay provision of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 362(a)(1) (1982). Thus, at this time we need only resolve the contentions advanced by the plaintiffs and ACL.[2]

## II.

We first address the issues raised by the plaintiffs, and then turn to ACL's appeal. Plaintiffs press four claims. First, it is argued that as a matter of law Stella Neal's claim was not barred by the statute of limitations, and that therefore the jury's determination that the statute of limitations barred Neal's claim should be reversed. Second, plaintiffs contend that the district court's *in camera* discussions with two jurors tainted the damage verdicts, and thus a new trial is required on damages. Third, they challenge the adequacy of the damage verdicts. Finally, plaintiffs assert that the district court abused its discretion in scheduling the damage trials seriatim.

### A.

The first question the jury was asked to resolve was whether the statute of limitations barred any of the plaintiffs' claims. It was proper to instruct the jury that the discovery rule was applicable; consequently the relevant inquiry was whether each employee knew or had reason to know that

ty of a meaningful recovery requires that we proceed with appropriate haste. See, e.g., *Gold v. Johns-Manville Corp.,* 723 F.2d 1068, 1075–77 (3d Cir.1983). The issues raised solely by Johns-Manville, of course, will not be decided, but some issues common to ACL and Johns-Manville will be resolved. We do not believe that Johns-Manville will be unduly prejudiced, as the briefing in this appeal was most comprehensive, and the arguments well-presented. At the time that the appeal was argues, North American Asbestos Corporation was also involved, and thus we had the benefit of its briefs and oral advocacy as well.

he had an asbestos-related condition caused by exposure to asbestos fiber at the Philip Carey plant prior to November 28, 1976 (two years before suit was filed). The jury concluded that fourteen of the fifteen employees did not know or have reason to know the salient facts, but that George Neal did have such knowledge. Stella Neal's claim on behalf of George Neal was therefore barred by the statute of limitations. Counsel for plaintiffs maintains that defendants did not produce sufficient evidence to support the jury's conclusion that the claim on behalf of Stella Neal's husband was barred by the statute of limitations.

■ Federal courts sitting in diversity cases must apply the substantive laws of the states in which they sit, and statutes of limitations are considered substantive. See *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Witherow v. Firestone Tire and Rubber Co.*, 530 F.2d 160 (3d Cir.1976).

■ The statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant. *Melhorn v. AMREP Corp.*, 373 F.Supp. 1378, 1380 (M.D. Pa.1974). Where a plaintiff seeks to establish that the statute should be tolled by fraud or equitable estoppel, however, the burden shifts to the plaintiff. *Id.* The Pennsylvania Superior Court has applied this burden-shifting to the discovery rule, stating:

> The plaintiff has the burden of justifying any delay beyond the date on which the limitation would have expired if computed from the date on which the acts giving rise to the cause of action allegedly occurred. He must allege and prove facts which show that he made reasonable efforts to protect his interests and which explain why he was unable to discover the operative facts for his cause of action

sooner than he did. *Patton v. Commonwealth Trust Co.*, 276 Pa. 95, 99, 119 A. 834 (1923).

*Bickell v. Stein*, 291 Pa.Super. 145, 150, 435 A.2d 610, 612 (1981). Consequently, it appears to be the burden of a plaintiff to establish that the discovery rule should apply to his or her particular case.[3]

■ Whether or when a plaintiff knows or has reason to know of the existence and cause of his or her injury will often turn on inferences drawn from disputed facts. Where the question goes to the jury, as it did here, our review is limited to ascertaining whether sufficient evidence existed to support the jury's conclusion. The evidence on which the jury may have based its determination included testimony that Neal's asbestosis was well-established by the late 1950s or early 1960s, that x-ray reports showed that he had the disease as early as 1971, and that Neal was in a management position with Philip Carey and thus had access to information about asbestosis. From this evidence, the jury could reasonably conclude that Neal knew or had reason to know more than two years prior to the commencement of this lawsuit that he had an asbestos-related condition caused by exposure to asbestos fiber at Philip Carey's Plymouth Meeting plant.

### B.

The second issue we must resolve is whether the district court erred by speaking *in camera* to two jurors during damages deliberations and by not allowing counsel to review the transcript of the *in camera* discussions until after the verdicts had been returned. Plaintiffs do not charge that the district court said anything improper to the jurors, nor do they suggest that they were in any way prejudiced by the content or import of the court's statements. Rather, they point to the substance

---

3. Counsel for plaintiffs maintains that defendants failed to argue that the statute of limitations barred Neal's claim, but plaintiffs' counsel did not object when the district judge instructed the jury to consider the applicability of the statute of limitations to all plaintiffs. There is no contention that defendants failed to *assert* the defense, but only that they failed to press it at trial. If counsel believed that defendants had waived the statute of limitations defense, they should have objected when the jury instructions were given.

of the jurors' remarks about the jury's deliberative process, and assert that since those comments revealed bias, confusion and envy among the jurors, the district court erred in not allowing counsel to review the transcript immediately to determine whether curative instructions or a mistrial might be appropriate. This argument is not persuasive.

■■■ We have previously held that while it is error to instruct the jury in the absence of counsel, without notice and without recording the jury's inquiry and the court's response, such error does not require reversal unless there is a showing of prejudice. *See Skill v. Martinez*, 677 F.2d 368, 371 (3d Cir.1982); *see also Powell v. Kroger Co.*, 644 F.2d 1245 (8th Cir.1981). Plaintiffs have not shown any prejudice from the court's colloquy with the jury here; rather they rely solely on the jurors' revelations about the jury's deliberative processes. It is well settled, however, that the jury's deliberative processes are not legally cognizable, except where subject to "extraneous influences." *See Govt. of Virgin Islands v. Gereau*, 523 F.2d 140, 149 (3d Cir.1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *see also Govt. of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1078–1080 (3d Cir.1985); *cf.* Fed. R.Evid. 606(b). "Extraneous influences" may include communications between the judge and jury outside the presence of counsel. *Truscott v. Chaplin*, 403 F.2d 644 (3d Cir.1968). Here, however, plaintiffs do not suggest that the court influenced the jury in any way. Indeed, there is no allegation that the matters revealed by the jurors—envy, confusion, and bias—were the result of anything other than intra-jury influences. Such matters are an inevitable result of jury deliberations, and do not support a reversal. *Gereau*, 523 F.2d at 150.

### C.

Plaintiffs also attack the damage verdicts on the ground that they are manifestly inadequate. This claim was addressed first to the district court and denied. The standard for review of jury verdicts is a strict one at the district court level and even more strict at the appellate level. The test binding on district courts was set out in *Tann v. Service Distributors, Inc.*, 56 F.R.D. 593, 598 (E.D.Pa.1972), *aff'd mem.*, 481 F.2d 1399 (3d Cir.1973), as follows:

> Damages assessed by a jury are not to be set aside unless shocking to the judicial conscience or so grossly inadequate as to constitute a miscarriage of justice. *Coleman v. Quaker State Coca-Cola Bottling Co.*, 328 F.Supp. 314 (E.D.Pa. 1971); *Peterson v. Calmar Steamship Corp.*, 296 F.Supp. 8 (E.D.Pa.1969), or unless the jury's award indicates caprice or mistake or a clear abuse of its fact-finding discretion or the clear influence of partiality, corruption, passion, prejudice, or a misconception of the law, *Mainelli v. Haberstroh*, 237 F.Supp. 190 (M.D.Pa.1964), aff'd per curiam, 344 F.2d 965 (3d Cir.1965).

The *Tann* standard was followed in *Smith v. Lees*, 431 F.Supp. 923 (E.D.Pa.1977), where the court, distinguishing the appellate standard for review, said:

> Appellate review of damage awards for inadequacy is even narrower than the standard [for the trial court]; generally it is limited to ascertaining whether the trial court's refusal to enter a new trial on this ground amounts to an abuse of discretion.

*Id.* at 930; *cf. Edynak v. Atlantic Shipping Inc.*, 562 F.2d 215, 225–26 (3d Cir. 1977) (appellate review of a claim that jury verdict was excessive governed by "manifest abuse of discretion" standard), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *David by Berkeley v. Pueblo Supermarket*, 740 F.2d 230, 239 (3d Cir.1984).

■■■ Plaintiffs attempt to establish the manifest inadequacy of the damage verdicts by comparing them and showing that they are incapable of rational reconciliation, and by pointing to the evidence of improper intra-jury influences elicited during the *in camera* conferences. The latter information is not cognizable, however, for

purposes of overturning the jury verdict. *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245, 1247 (3d Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 212, 30 L.Ed.2d 165 (1971). The differences in the amounts of the verdicts, moreover, cannot be said to shock the conscience. There simply is no mechanical or logical test to assess damages, and even if there were such a mechanism, the jury system is certainly not it. When parties choose a jury trial, they must accept the inherent inconsistencies of jury deliberations. *See Jackson v. Johns-Manville Sales Corp.,* 727 F.2d 506, 523–24 (5th Cir.1984). Appellate review is not designed to rationalize jury verdicts, even if such a task were possible. We cannot say on the basis of the record here that the district court abused its discretion in declining to set aside the damage verdicts.

### D.

The last proposition advanced by plaintiffs concerns the manner in which this district court scheduled the damage portions of the trials. They allege that the district court abused its discretion in scheduling the damage trials sequentially with one-half hour intervals, thereby forcing the plaintiffs to rely on a single medical expert to establish damages for all plaintiffs. Plaintiffs claim that had they had sufficient time between the trials, they could have produced family physicians for each plaintiff. However, the plaintiffs did not object to the district court's proposal to proceed with the hearings sequentially on the ground of the unavailability of the treating family physician, or on any other ground. The district court cannot be said to have abused its discretion in so scheduling the damage trials, particularly where there was no objection to the procedure.

Plaintiffs' appeal, therefore, raises no grounds that would justify reversing the judgments entered, and these aspects of the court's decision will be affirmed.

4. This argument was advanced by North American Asbestos Corporation, and incorporated by

### III.

ACL raises three sets of issues in its appeal. First, it urges that the district court lacked *in personam* jurisdiction over it. Second, it maintains that the judgments against all supplier-defendants should be reversed on various causation grounds, essentially contending that the employer was the sole responsible tortfeasor. Third, it argues that the claims of two plaintiffs—Hojnacki and Satterwhite—are barred as a matter of law by the statute of limitations.[4] We will consider these contentions in turn.

### A.

First, ACL insists that the district court erred in denying its motion to dismiss for lack of *in personam* jurisdiction. ACL is a Canadian corporation operating in Quebec. It has never been incorporated under Pennsylvania law, has no subsidiary conducting business in Pennsylvania, is not registered as a foreign corporation in Pennsylvania, has no agents, employees, or officers in Pennsylvania, and has never instituted a lawsuit in Pennsylvania. It further asserts that all of its contracts to supply asbestos to Philip Carey were negotiated through Philip Carey's office in Lockland, Ohio, and that the asbestos fiber was sold F.O.B. and paid for in Canada. ACL maintains that it never knew that its asbestos fiber was being directed to Pennsylvania, and that Philip Carey, as a customer, unilaterally so directed it. The record, however, demonstrates that ACL produced a list which included sales of asbestos fiber to the Plymouth Meeting plant. That list establishes that ACL knew that its fiber was being shipped directly to the Philip Carey plant in Plymouth Meeting, Pennsylvania, from 1931 to 1952. N.T. 16.78–79.

To determine whether the exercise of *in personam* jurisdiction over a non-resident defendant is proper, the court must look first to the forum state's long-arm jurisdiction statute, and then must ascer-

ACL in its appeal.

tain whether the exercise of jurisdiction comports with the due process clause of the Constitution. This two-step process has been conflated in many states, Pennsylvania among them, by the adoption of a long-arm statute that authorizes jurisdiction to the fullest extent allowed by the United States Constitution. *See* 42 Pa.C.S.A. § 5322 (Purdon 1981); *see also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984); *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951, 955–56 (E.D.Pa. 1982). Because Pennsylvania's statute expressly incorporates the federal due process standard, we need only inquire whether *in personam* jurisdiction over ACL under the circumstances here satisfies due process requirements.

In *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Court set forth a two-track approach to determine the constitutional limits on long-arm jurisdiction. Different jurisdictional tests apply where the cause of action arises from a non-resident defendant's specific forum-related acts and where the cause of action arises from non-forum acts, but the defendant has an ongoing connection with the forum. The latter exercise of jurisdiction is termed "general jurisdiction," *see e.g., Helicopteros Nacionales de Colombia v. Hall*, —— U.S. ——, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984), while the former is characterized as "specific jurisdiction." *Id.*, 104 S.Ct. at 1872 n. 8; *see generally, Dollar Savings Bank v. First Securities Bank of Utah*, 746 F.2d 208, 211–15 (3d Cir.1984); Von Mehren & Troutman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L. Rev. 1136 (1966).

This case implicates "specific jurisdiction"—the cause of action arises from tortious injuries suffered by plaintiffs when they inhaled asbestos fiber at the Plymouth

Meeting plant. In such a case, the "minimum contacts" analysis established in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), applies.[5] "The focus in such a case must be upon the relationship of the transaction to the forum." *Paolino v. Channel Home Centers*, 668 F.2d 721, 724 (3d Cir. 1981).

The "minimum contacts" requirement serves two purposes: (1) it protects non-resident defendants from litigating in an inconvenient forum where the defendant has done nothing to justify a court's exercise of jurisdiction over it; and (2) it ensures that states accord each other the mutual respect implicit in our federal system by not extending their jurisdiction beyond their legitimate interests. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). The court's inquiry, then, must focus on the defendant's reasonable expectations and relative inconvenience, as well as on the state's interest in providing a forum for the injuries suffered.

It is asserted that because of ACL's status as a Canadian corporation with little or no ongoing connection to Pennsylvania, it would be unfair to subject it to suit in Pennsylvania. The question is whether ACL's contacts with Pennsylvania were such that "[it] reasonably should anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. In *World-Wide Volkswagen*, the Court determined that a defendant located far from Oklahoma which engaged in absolutely no commercial activity in Oklahoma, and which did not seek to serve the Oklahoma market even indirectly, could not reasonably be subject to *in personam* jurisdiction in that state. The Court carefully distinguished its case, involving one "isolated" and "fortuitous"

---

**5.** The classic formulation of minimum contacts holds that:

[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts

with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

contact, from situations where a defendant had knowingly distributed its products in the forum state:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

444 U.S. at 295, 297, 100 S.Ct. at 566, 567.

ACL contends that all its contracts for the sale of asbestos fiber were negotiated with Philip Carey's Lockland, Ohio, office, and that it had no knowledge that the fiber was going anywhere other than Lockland.[6] The record suggests otherwise. ACL's own sales list documents an almost twenty-year history of asbestos fiber shipment to Philip Carey's Plymouth Meeting plant. N.T. 16–78–79. If ACL knew or should have foreseen that its product would be delivered, directly or indirectly, to Pennsylvania, *in personam* jurisdiction exists and is proper under state and federal case law. *See, e.g., Hicks v. Kawasaki Heavy Industries, Inc.,* 452 F.Supp. 130 (M.D.Pa.1978); *Koenig v. Int'l Brotherhood of Boilermakers,* 284 Pa.Super. 558, 571, 426 A.2d 635, 641–42 (1980); *Kitzinger v. Gimbel Bros., Inc.,* 240 Pa.Super. 345, 368 A.2d 333 (1976) (Hong Kong supplier with no offices, agents, or other contacts with Pennsylvania, which sold its product F.O.B., Hong Kong, by contracts arranged in Hong Kong, was nonetheless answerable to suit in Pennsylvania because it marked each box with its final destination, including specific stores in Pennsylvania). Even a single contact, if knowing and purposeful, may satisfy due process requirements. *McGee v. Int'l Life Insurance Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 200, 2 L.Ed.2d 223 (1957) (single life insurance policy); *Moore v. Little Giant Industries, Inc.,* 513

F.Supp. 1043 (D.Del.1981), *aff'd mem.,* 681 F.2d 807 (3d Cir.1982) (single ladder procured in Minnesota but shipped to plaintiff's Delaware address, F.O.B. Utah). ACL's own records reflect a long history of annual shipments of asbestos fiber to the Plymouth Meeting plant. This activity should have put ACL on notice that if its fiber caused injury in Pennsylvania, it might have to answer to suits there.

The state interest component of the "minimum contacts" analysis also supports the exercise of *in personam* jurisdiction. The site at which all of the injuries took place was a Pennsylvania plant. Pennsylvania has an indisputable interest in ensuring that employees injured within its borders have access to a forum for remedies. Cf. *Keeton v. Hustler,* — U.S. —, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) ("It is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.")

Accordingly, we will affirm the district court's denial of ACL's motion to dismiss for lack of *in personam* jurisdiction.

### B.

In considering the second set of contentions raised by ACL, it is important to recognize what is not at issue in this appeal. ACL does not dispute that because of the danger of asbestos, it had a duty, under negligence and strict liability analyses, to provide a warning to users of its product. ACL also does not challenge the jury finding that ACL breached its duty by failing to provide any warnings whatsoever during the period in question. Thus, ACL does not appeal the conclusion that it was negligent. Similarly, ACL does not dispute the finding that its failure to warn rendered its product defective for purposes of strict liability.

ACL's appeal focuses instead on causation. It urges that even if it were negli-

---

6. ACL presumably would have to concede that it would be amenable to suit in Ohio as a result of its admitted history of business with Philip Carey's office there. ACL has made no suggestion that litigating in Pennsylvania rather than Ohio caused it any inconvenience. *Cf. Paolino v. Channel Home Centers,* 668 F.2d at 725.

gent, and even if its product were defective, the jury's finding that ACL's failure to warn proximately caused plaintiffs' injuries is incorrect. ACL's causation argument proceeds along two related avenues. First, it maintains that Philip Carey's conduct as a matter of law was the sole proximate cause of plaintiffs' injuries, and that the judge erred in failing specifically to instruct the jury regarding the issue of sole proximate cause. Second, it asserts that Philip Carey's conduct as a matter of law was a superseding cause, and that the judge erred in restricting his superseding cause charge to Philip Carey's post-1963 conduct. Each of these claims is related to defendants' assertion at trial that Philip Carey's failure to provide a safe workplace was the sole legal cause of plaintiffs' injuries.

The related defenses of sole proximate cause and superseding cause in the context of a products liability or negligence case predicated on failure to warn do not appear to have been comprehensively delineated in the existing Pennsylvania case law, and therefore it is necessary to consider these issues in some detail.

### 1.

█ Proximate causation is a necessary element in proving a tort case under theories of strict liability or negligence. *Sherk v. Daisy-Heddon,* 498 Pa. 594, 598, 450 A.2d 615, 617 (1982); Restatement (Second) of Torts, §§ 430, 431 (1965). A proximate, or legal cause, is defined as a substantial contributing factor in bringing about the harm in question. *Whitner v. Von Hintz,* 437 Pa. 448, 456–58, 263 A.2d 889, 893–94 (1970). Although there can be more than one proximate cause, all factual (but for) causes are not necessarily proximate causes. The use of the phrase "substantial factor" in the Restatement and case law demonstrates a recognition that there is no litmus test of causation. Rather proximate causation, and hence liability, hinges on principles of responsibility, not physics. Restatement (Second) of Torts, § 431 comment a.

ACL may be relieved of liability for its negligence or for supplying a defective product only if its failure to warn was not a substantial factor in causing plaintiffs to inhale asbestos fibers. If Philip Carey was the sole proximate cause of the harm, ACL's conduct would not be a substantial factor. ACL asserts that at the very least, the question of sole proximate cause should have been submitted to the jury. In this regard, defendants' counsel requested that the court give the following instruction:

> Although you have not been requested specifically to determine whether or not the conduct of Philip Carey was a proximate cause of the plaintiff's condition with regard to the period 1929–1962, you may consider that conduct in determining whether or not the conduct or products of the supplier defendants was a proximate cause of the conditions of the plaintiffs. If you find that the sole proximate cause (ie sole substantial factor) was the conduct of Philip Carey then the conduct of the supplier defendants could not be a proximate cause.
>
> Requested Instruction of Supplier Defendants Docketed as 888.

The trial judge declined to give the foregoing instruction on the ground that he had covered such an exigency in his more general proximate cause charge, and had allowed defendants to present this argument to the jury during the course of the trial. The court's refusal to so instruct the jury may be affirmed on either of two grounds: (1) that the instruction need not have been given, because defendant suppliers failed to adduce sufficient evidence to justify such a charge; or (2) that even if the instruction should have been given, the failure to so instruct did not prejudice defendants and therefore does not constitute reversible error. We discuss these grounds in turn.

█ Where, as here, the initial hurdles of duty and failure to warn have been passed, plaintiff must establish causation by showing that had defendants issued a proper warning, plaintiffs would have altered their behavior to avoid the injury.

Defendants can defeat causation in a failure to warn case by discrediting plaintiffs' claims that they would have acted to avoid injury, or by pointing to a third party as the sole proximate cause. ACL does not contend that its defense was impaired by the jury instruction with respect to the former approach,[7] but only with respect to the latter.

■ The sole proximate cause defense, however, is particularly difficult to demonstrate in a failure to warn context, for one must show that the third party's conduct in some way negates the proposition that plaintiffs would have avoided injury had they been appropriately warned. Without evidence supporting such a negation, there may be no finding that the third party's conduct was the only substantial factor, or sole proximate cause. In the present case, sole proximate cause might have been shown if there were some evidence that Philip Carey would have removed the warning labels, or would have forced its employees in some manner to work in direct con-

tact with asbestos against their will. But the only employer conduct that the defendant suppliers pointed to was "the failure to properly regulate the workplace ... [the] failure to develop engineering and dust control, [the] failure to provide personal protection and adequate medical monitoring, and [the] failure to educate workers despite [Philip Carey's] knowledge of the hazards of prolonged asbestos exposure." Brief for ACL at 26. These are acts of omission, not commission. None of them negates the proposition that had plaintiffs been aware of the danger, they would have taken steps to protect themselves.

Consequently, the district judge was justified in not charging the jury as defendants requested, because they had failed to introduce sufficient evidence to support their defense of sole proximate cause.[8]

■ Moreover, even assuming that evidence in the record justified the proposed instruction, the failure to so instruct does not constitute reversible error. The court allowed defendants to argue the sole proxi-

7. The jury's conclusions on causation indicate that it in fact credited plaintiffs' testimony regarding the probable effect of warnings. ACL challenges the jury's conclusion in this respect, but we find their challenge unconvincing. ACL relies on *Greiner v. Volkswagenwerk Aktiengesellschaft,* 429 F.Supp. 495 (E.D.Pa.1977) and *Day v. Volkswagenwerk Aktiengesellschaft,* 451 F.Supp. 4 (1977) aff'd mem., 578 F.2d 1373 (3d Cir.1978), to suggest that the jury could not conceivably find that plaintiffs would have changed their behavior had they been warned of the danger of asbestos, and therefore that the failure to warn was as a matter of law not a proximate cause. Both *Greiner* and *Day* involved automobile accidents. In both cases, courts determined that *in the absence of any testimony from the plaintiffs* it would be mere speculation to infer that plaintiffs would not have purchased their cars had they been warned, respectively, that the cars had a propensity to overturn, or were dangerous in front-end collisions. 429 F.Supp. at 498; 451 F.Supp. at 6. In the case at hand, plaintiffs testified that they would have altered their conduct by terminating their employment, and the district judge found it inferable that plaintiffs, if warned, might have persuaded Philip Carey to adopt safer practices. *Neal,* 548 F.Supp. at 370. We do not find this testimony or these inferences untenable. In any event, assessing the credibility of plaintiffs' assertions is a matter to be left to the jury.

8. The suppliers' reliance on *Burke v. Duquesne Light Company,* 231 Pa.Super. 412, 332 A.2d 544 (1974), is misplaced. The issue before the Superior Court in *Burke* was whether the trial judge had erred in holding that the Pennsylvania Workmen's Compensation Act barred a defendant from arguing that a third-party employer was the sole proximate cause of an injury. The court held that even though the Workmen's Compensation Act limited the amount of recovery available from the employer, it did not preclude any argument that the employer was in fact solely responsible. The court stated that a defendant can always *allege* the sole liability of an employer, and "if the evidence he produces justifies said instruction," the jury should be instructed that it might find the employer's conduct to have been the sole legal cause of the injury. 231 Pa.Super. at 419–20, 332 A.2d at 547.

The trial judge in the present case, unlike in *Burke,* did not foreclose the jury from finding the employer solely responsible in determining proximate cause. Moreover, in view of plaintiffs' testimony regarding the absence of warnings, there is no evidence in the record to support a finding of sole employer liability. Where there is no record support for such an instruction, it need not be given. *Burke, supra; cf. Grasha v. Ingersoll-Rand Co.,* 439 Pa. 216, 220, 266 A.2d 710, 711–12 (1970).

mate cause issue to the jury, and acknowledged that even though plaintiffs' employer was shielded from liability by the Pennsylvania Workmen's Compensation Act, "that doesn't prevent the jury from considering [Philip Carey's conduct] the cause." N.T. 22.21; *cf.* N.T. 21.230. The jury was instructed that it had to determine whether each supplier's conduct was a substantial factor in plaintiffs' injuries. If the jury had been persuaded by the suppliers' argument that Philip Carey was alone responsible, it would not have found the suppliers' actions to have contributed substantially to the harm.

■■■ In determining whether a factual cause is a legal cause, the jury must consider many elements, including intervening natural events, the passage of time, intervening actors, and the conduct of the injured party. Courts are not required to enumerate *all* the specific factors that might defeat legal causation, even if such a task were possible. Nor should we necessarily reverse a trial court for failure to instruct regarding any one specific element, so long as the jury is not expressly or impliedly foreclosed from considering the issue. The judge in this case never instructed the jury that it should *disregard* all that it had heard with respect to the employer's conduct in deciding whether the suppliers' failure to warn was a proximate cause. The court did tell the jury that because of Pennsylvania's Workmen's Compensation Act, plaintiffs could not *recover* from Philip Carey for actions taken prior to 1963, but this is not to suggest that were Philip Carey's conduct the sole substantial factor in the harm, the jury should nonetheless artificially create other "substantial factors." Whether the suppliers' failures to warn were substantial factors

causing harm to plaintiffs does not depend on whether Philip Carey can or cannot be sued. Defendants in their brief appear to gloss over the critical distinction between recovery and causation, and imply that the issues were blurred in the jury's mind. Our review of the record, however, does not bear this out. Rather, it appears that in this thirty-day trial, where the defendant suppliers argued at length, with court approval, that the employer was the sole proximate cause of the plaintiffs' injuries, the jury simply did not find the suppliers' arguments compelling.[9]

ACL urges that its sole proximate cause argument is supported by a line of cases holding that where an employer is aware of a product's dangers, the supplier need not warn employees. *See Lockett v. General Electric Co.*, 376 F.Supp. 1201 (E.D.Pa. 1974), *aff'd mem.*, 511 F.2d 1394 (3d Cir. 1975); *Hopkins v. E.I. du Pont de Nemours & Co.*, 212 F.2d 623 (3d Cir.1954), *cert. denied*, 348 U.S. 872, 75 S.Ct. 108, 99 L.Ed. 686 (1954). These cases are inapposite for three reasons. First, they involve the issue of a duty to warn rather than the issue of causation, and defendants here do not dispute on appeal that they had a duty to warn. Second, *Lockett* and *Hopkins* concerned situations where it was not foreseeable that the employer would fail to take adequate precautions, while in the case at hand it appears that the employer's conduct not only was foreseeable by the suppliers, but was essentially duplicated in the suppliers' own factories. 548 F.Supp. at 371–72. Finally, *Lockett* and *Hopkins* were negligence actions, and it is clear that whether or not a supplier may rely on the employer's knowledge in the negligence context,[10] it may not do so under the law of

---

**9.** It is instructive to note that where the jury was asked specifically to consider whether Philip Carey's post-1963 conduct should absolve the suppliers, it found that even though Philip Carey's conduct was intentional and "outrageous" (and therefore justified punitive damages), such conduct nonetheless was not a superseding cause. This conclusion that Philip Carey's post-1963 action should not absolve the suppliers of their liability for failure to warn suggests that if

it had been instructed to make a specific finding, the jury would not have found the less objectionable pre-1963 conduct to be the sole proximate cause of the harm.

**10.** The court in *Lockett* based its decision on several independent grounds, and it is not clear which grounds may be considered the holding of the court and which are only dicta. In any event, its statement that there is no duty to warn employees is supported only by reference to

Pennsylvania on strict liability. As this Court stated recently in *Brown v. Caterpillar Tractor Co.*, 741 F.2d 656, 660 (3d Cir.1984), the duty to warn under § 402A extends to employees as well as employers, and "must be gauged in light of the employee's knowledge and not that of his or her employer."

It follows ineluctably that where there is insufficient evidence to go to the jury on the issue of sole proximate cause, there also will be insufficient evidence to support a conclusion that the conduct in question was as a matter of law the sole proximate cause. None of the employer's conduct to which ACL refers invalidates the conclusion that the absence of warnings by the suppliers substantially contributed to plaintiffs' harm.

## 2.

ACL's alternative line of defense regarding causation is that the employer's conduct was a superseding cause. This claim is related to but distinct from ACL's claim that the employer's conduct was the sole proximate cause. If the employer's conduct is the sole proximate cause, then as a matter of logic there are no other proximate causes, and all other defendants would be absolved. A finding of superseding cause, however, would relieve a supplier of liability even though his antecedent act was a substantial factor in producing the harm. Thus, a jury could consistently find both proximate cause on the part of the suppliers and superseding cause on the part of the employer.

The questions of proximate cause and superseding cause are intended to further the same ultimate inquiry: how far should legal responsibility extend? The superseding cause determination, however, concentrates on one subset of responsibility considerations; that is, what legal effect should a third party's actions have after the original defendant has acted negligently or injected a defective product into the stream of commerce? The issue, in both strict liability and negligence contexts, turns largely on foreseeability. Restatement (Second) of Torts § 442. Only where the third party's action is "so extraordinary as to not have been reasonably foreseeable" might such action constitute a superseding cause. *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 184 (3d Cir.1979); *Eshbach v. W.T. Grant's and Company*, 481 F.2d 940, 944–45 (3d Cir.1973); *Burch v. Sears, Roebuck & Co.*, 320 Pa.Super. 444, 452, 467 A.2d 615, 619 (1983); *Wieder v. Towmotor Corp.*, 568 F.Supp. 1058, 1061, 1063 (E.D.Pa.1983), *aff'd mem.*, 734 F.2d 9 (3d Cir.1984).[11]

In this case, the court allowed the jury to consider whether Philip Carey's post-1963 conduct was a superseding cause of the injuries, but did not allow the question of superseding cause for Philip Carey's pre-1963 conduct to go to the jury. The 1963 date is critical because it was in that year that Philip Carey's own physician specifically advised it to warn its employees about the dangers of asbestosis. The suppliers contend that the superseding cause charge should have covered all of Philip Carey's conduct, and further that Philip Carey's conduct was a superseding cause as a matter of law.

*Marker v. Universal Oil Products Co.*, 250 F.2d 603, 607 (10th Cir.1957), a case which was decided under an earlier and different version of Restatement of Torts § 388. That section subsequently was amended to add the present language, stating that the intervention of a third party does not necessarily negate a duty to the user. Compare Restatement (Second) of Torts § 388 with Restatement of Torts § 388.

11. Although the Pennsylvania Supreme Court has admonished lower courts not to inject negligence principles such as foreseeability into strict liability determinations. *Azzarello v. Black Brothers*, 480 Pa. 547, 391 A.2d 1020 (1978), the issue of foreseeability would appear to be inescapable where the defense of superseding cause is raised. Courts and commentators have noted that the test for determining superseding cause is similar to the test for determining abnormal use in strict liability, in that both turn on the foreseeability of a third party's action. See *Pegg v. General Motors Corp.*, 258 Pa.Super. 59, 78–79, 391 A.2d 1074, 1083–4 (1978); *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 331 n. 13, 319 A.3d 914, 921 n. 13 (1974); P. Sherman, *Products Liability for the General Practitioner* 260–61 (1981).

A superseding cause instruction is appropriate where the evidence justifies it, that is, where there is reasonable room for disagreement whether the third party action, here the action of the employer, was extraordinary and not foreseeable, or otherwise fits the legal definition of superseding cause. *Pegg*, 391 A.2d at 1085. In the present case, Philip Carey's pre-1963 conduct consisted entirely of negligent failures to act. *Neal*, 548 F.Supp. at 371. We are guided therefore by Sections 447[12] and 452[13] of the Restatement. See *Grainy v. Campbell*, 493 Pa. 88, 91–94, 425 A.2d 379, 381–83 (1981); *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970); *Meuller v. Jeffrey Mfg. Co.*, 494 F.Supp. 275, 277–78 (E.D.Pa.1980). The former section governs intervening negligent third party conduct generally, while the latter refers specifically to an intervening failure to act. If Philip Carey's conduct is appropriately characterized as a failure to prevent harm, defendant suppliers must meet the separate hurdles of both § 447 and § 452; they must show that Philip Carey's conduct was "highly extraordinary" and unforeseeable *and* that the duty to prevent harm had shifted entirely from the suppliers to Philip Carey.[14]

It is proper for a district judge to determine, in the first instance, whether to instruct the jury on superseding cause, particularly where the defense is that the third party failed to act to prevent harm. See *Baker v. Outboard Marine Corp.*, 595

F.2d at 183, quoting *Eshbach v. W.T. Grant's & Co.*, 481 F.2d at 945 (trial court should "either remove the question of [third party intervening] negligence from the case *entirely*, or if it was to be considered, instruct the jury as to the limits of its application") (emphasis supplied); *DiRago v. American Export Lines, Inc.*, 636 F.2d 860, 865 (3d Cir.1981) (burden on a defendant seeking to invoke § 452(2) is a heavy one, and superseding cause charge will be given only in exceptional cases). Where the third party's conduct in question is a failure to prevent harm, even a finding of extraordinary negligence may not in itself warrant a jury instruction, absent other factors supporting a shift in the duty to prevent harm. *DiRago*, 636 F.2d at 866. Unless the trial court determines that there is room for reasonable disagreement regarding foreseeability and duty-shifting, a superseding cause charge should not be given in a situation involving a third party's failure to prevent harm.

With respect to pre-1963 conduct, the district court correctly found that there was nothing highly extraordinary in Philip Carey's failure to maintain a safe workplace, for substantially similar workplace conditions existed in suppliers' own plants. *Neal*, 548 F.Supp. at 371–72. Thus, the court's refusal to instruct regarding superseding cause for the pre-1963 time period was justified under § 447.

12. Section 447 provides:
   The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
   (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
   (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
   (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent. Restatement (Second) of Torts, § 447 (1965).

13. Section 452 states:
   (1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm.
   (2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause. Restatement (Second) of Torts § 452 (1965).

14. ACL does not appear to question the "failure to prevent harm" characterization, as it premises its argument primarily on § 452. *See* Brief for ACL at 43–47.

Section 452, which states the general rule that a third party's failure to prevent harm is not a superseding cause, also supports the district judge's instruction here. *See* § 452(1) Restatement (Second) of Torts (1965). The only exception to the general rule is where the duty to prevent harm has shifted to the third party. Restatement (Second) of Torts, § 452(2) (1965). But in the strict liability context, "the duty to provide a non-defective product is non-delegable." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 103, 337 A.2d 893, 903 (1975).[15] If the duty is non-delegable, it cannot be shifted. Therefore, *Berkebile* strongly suggests that in a strict liability situation, a third party's failure to warn will not constitute a superseding cause.

ACL relies on two cases to support its argument that the duty to prevent harm had shifted, and that consequently this case fits the § 452(2) exception. *Schreffler v. Birdsboro Corp.*, 490 F.2d 1148 (3d Cir. 1974); *Meuller*, 494 F.Supp. 275. *Schreffler* preceded *Berkebile* and its progeny. Although *Meuller* post-dated *Berkebile*, it failed to mention *Berkebile*. *Schreffler* and *Meuller*, moreover, are distinguishable on their facts. Each involved a patent defect in a single piece of equipment, rather than a latent defect in a product supplied on a continuing basis. The *Meuller* court noted that the "overtness of the danger" is a relevant factor in determining whether the duty shifts. *Meuller*, 494 F.Supp. at 278.

In both cases, moreover, the lapse of time between purchase and injury—six years in *Schreffler* and fifteen years in *Meuller*—was considered a significant factor. Where, however, as here, a supplier is continually supplying a product with a latent defect in it, and the supplier has reason to know that sufficient precautions are not being taken with respect to the use of that product, there is no good reason, even

under negligence principles, to shift the duty to warn. In such a situation, both the supplier and the employer have the capacity, and the duty, to warn the employees. The fact that an intervening party also failed to warn an unwitting user should not absolve a regular supplier. Where supply is continuous, there is no "lapse of time" that would justify shifting the duty. Restatement (Second) of Torts § 452(1) (1965).

Even under negligence principles, the § 452(2) exception is invoked only rarely. *DiRago*, 636 F.2d at 865. And the present situation is not one of those rare cases. The district court was justified under both negligence and strict liability approaches in refusing to charge the jury on superseding cause for the pre-1963 period, and in declining to find as a matter of law that Philip Carey's conduct at that time was a superseding cause.

The district judge did allow the superseding cause issue to go to the jury regarding Philip Carey's post-1963 conduct, because the suppliers had introduced evidence that in 1963 Philip Carey had been advised by its own physician that it should warn its employees, and nonetheless declined to do so. Because this evidence may have established an intentional failure to warn, and presumably because after 1963 the plant was closed and the defendants' supply of asbestos had ceased, the judge allowed the superseding cause question for the post-1963 period to go to the jury. The jury, however, found that even Philip Carey's post-1963 conduct was not so extraordinary and unforeseeable as to be a superseding cause. We find no basis in the record on which to reverse this determination.

### C.

The final issues in ACL's appeal concern a challenge to the jury's application of the statute of limitations to the claims of Edward Hojnacki and Nathaniel Satterwhite.

---

**15.** Although there has been some question as to the legal effect of the plurality decision in *Berkebile, see, e.g., Bair v. American Motors Corp.,* 535 F.2d 249, 250 (3d Cir.1976), those questions appear to have been resolved by subsequent Pennsylvania decisions. *Lewis v. Rego Co.,* 757 F.2d 66, 70 n. 4 (3d Cir.1985).

The jury found that neither Hojnacki nor Satterwhite knew or reasonably should have known of his injury and its operative cause prior to November 28, 1976, and therefore neither claim was time-barred by the two-year statute of limitations. Defendants argue that overwhelming evidence in the record establishes that as a matter of law both claims should have been barred.

As noted above, under the discovery rule applicable at the time of this lawsuit, the statute of limitations began to run when the plaintiff knew or had reason to know of the injury, the operative cause of the injury, and the causal relationship between the injury and the operative conduct. *Anthony v. Koppers*, 248 Pa.Super. 81, 425 A.2d 428, 436 (1980), *rev'd on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981).[16] Since the applicability of the statute of limitations usually involves questions of fact for the jury, defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred.

Satterwhite's physician testified at trial that he *probably* told him in 1972 that he had asbestosis, caused by exposure to asbestos fiber. N.T. 22.87, 22.89. Satterwhite stated that he did not learn of the cause of his disease until the early spring of 1978, when he began to have breathing problems at work. N.T. 14.14, 15.15. He also testified that he specifically did not know the cause of his lung condition in 1972. N.T. 15.29–30. Counsel points to Satterwhite's low level of education to support the claim that he did not in fact know the cause, and possibly did not understand his doctor. Defendants respond that the test turns not on actual knowledge but on objectively reasonable knowledge. Nevertheless, the physician also testified that while he probably told Satterwhite, he sometimes refrains from explaining the

cause where the patient might not understand the language, "depending on the intelligence of the individual." N.T. 22.90–91, 22.104–05. This testimony presents a sufficient issue of fact and credibility for the jury to find that Satterwhite was not advised of the cause of his injury, and that therefore his claim was not barred by the statute of limitations.

Hojnacki's physician testified that he had informed Hojnacki that he had a chronic lung condition in 1971 or 1974. Hojnacki's wife testified that her husband, who died shortly after this case was filed, did not know until 1978 that his injury was caused by exposure to asbestos at the Philip Carey plant. Again, defendants emphasize that the test is an objective one—i.e., should Hojnacki reasonably have known. They argue that the discovery rule does not reward ignorance, but "imposes a burden of diligence upon plaintiff to inform himself." *Grabowski v. Turner & Newall*, 516 F.Supp. 114, 118 (E.D.Pa.1980), *aff'd sub nom. DaMato v. Turner & Newall, Ltd.*, 651 F.2d 908 (3d Cir.1981) (per curiam). Nevertheless, the district court found, and we cannot disagree, that the conflicting testimony raised an issue of credibility for the jury regarding the extent of Hojnacki's reasonable knowledge, and that the jury's answer to the statute of limitations interrogatory was supported by sufficient evidence.

ACL's appeal therefore establishes no reversible error, and we will affirm these aspects of the district court's decision.

## IV.

For the reasons stated above, the judgment of the district court will be affirmed.

---

16. The Pennsylvania discovery rule has since been changed. Under the new formulation, the "causal relationship" criterion has been dropped, and the statute of limitations is triggered when the plaintiff knows or reasonably should know of the injury and its operative cause. *Cathcart v. Keene Industries Insulation*, 324 Pa.Super. 123, 471 A.2d 493, 500 (1984) (en banc). The result in the present case would be the same under either analysis.